CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. SAMUEL COPELAND AND CIVIL SERVICE COMMISSION, DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 11, 1979—Decided January 2, 1980.

Before Judges LORA, ANTELL and PRESSLER.

*Salvatore Perillo,* attorney for appellant (*Thomas W. Matthews* on the brief).

*John J. Degnan,* Attorney General of New Jersey, attorney for respondent Civil Service Commission (*Henry D. Blinder,* Deputy Attorney General of counsel and on the statement in lieu of brief).

*James Eastmond,* attorney for respondent Samuel Copeland (on the letter brief).

The opinion of the court was delivered by

PRESSLER, J. A. D.

Based on a finding of insubordination, the City of Newark first suspended and then terminated the employment of Samual Copeland, a building maintenance worker in the city's Department of Parks and Recreation. On his appeal from his discharge to the Civil Service Commission, the Commission concluded, following the recommendation of its hearing officer, that Copeland was a permanent employee of the classified service entitled to the substantive and procedural protections of the Civil Service laws. It further accepted the finding of the hearing officer that while Copeland had been guilty of an act of insubordination justifying the original three-day suspension imposed upon him, the discharge was unsustainable in view of the mitigating circumstances surrounding the infraction and its minor nature. Accordingly, the Commission ordered his reinstatement together with back pay, rejecting the city's claim that welfare benefits received by Copeland under the AFDC program following his discharge should be calculated in mitigation of the back pay award. The city appeals from all of these determinations, claiming as well that Copeland's appeal to the Commission was untimely.

As to the Commission's conclusions respecting Copeland's permanent employee status and the impropriety of the discharge penalty, we are satisfied that these determinations are supported by sufficient credible evidence on the record as a whole, R. 2:11–3(e)(1)(D), and accordingly we decline to interfere therewith. See Campbell v. Civil Service Dep't, 39 N.J. 556, 562 (1963). We note further in respect of the penalty determination that there is nothing in this record to suggest a mistaken exercise of the Commission's de novo penalty review jurisdiction afforded by N.J.S.A. 11:15–6. See, e. g., West New York v. Bock, 38 N.J. 500, 514–518 (1962). Nor do we perceive any merit in the city's timeliness argument. Copeland notified the Commission of his desire to appeal the discharge within a week after

the incident occurred and was hence well within the 20-day appeal period prescribed by *N.J.A.C.* 4:1–5.3.

■ The back pay problem is more substantial. The city argues first, relying on *Feldman v. Irvington Fire Dept.*, 162 *N.J.Super.* 177 (App.Div.1978), that no back pay should have been granted at all since Copeland was not exonerated of the basic charge underlying the disciplinary action but, to the contrary, had been found guilty thereof. Even assuming, however, our agreement with the holding in *Feldman*, we are satisfied that its strictures are inapplicable here. While *Feldman* does suggest that back pay should ordinarily not be awarded where an employee has been found to have committed the charged infraction, the rationale underlying that holding is that where the charge is proved, the original penalty therefor, although it may be subsequently deemed to have been too severe, cannot be deemed to have been *per se* "illegal." 162 *N.J.Super.* at 185. Here, however, the discharge penalty was expressly held to have been not only too severe but also illegal, the hearing officer having found, and the Commission having agreed, that since the city had already imposed a three-day suspension, the consequent removal for the same charge was invalid since it resulted in Copeland being "punished twice for the same infraction." We also point out that one of the concerns expressed in *Feldman* on its withholding of back pay was the "extraordinary delay" in prosecuting the appeal from the municipal action through the administrative and judicial review process—a delay which, in the case of a "guilty" employee, the municipality ought not to be chargeable with by way of accruing back pay. Here, however, we are satisfied that a primary cause of the delay was the city's unjustifiable challenge to Copeland's permanent status and the trial and pretrial time devoted to the resolution of that issue. We are for these reasons persuaded that the Commission did not err in ordering back pay.

The final issue the city raises and one in which we find substantial merit concerns the manner in which the Commission calculated the back pay award. The gross back pay, that is, the amount of municipal salary which Copeland would have earned but for the discharge, was $12,649.35. During the discharge period he was unable to find employment, having earned only $183.60 in a brief construction job. The deduction of that sum from gross back pay is not disputed. He sustained himself and his family during the period of the discharge by his receipt of $3,432 in unemployment compensation benefits and $3,204 in AFDC public assistance payments. Because of the back pay award, he was advised by formal Determination and Demand notice of the State Division of Unemployment and Disability Insurance of his obligation to repay therefrom the unemployment compensation benefits. Consequently, the city does not urge that that sum should be considered in mitigation. It does, however, urge that since Copeland is under no obligation to repay the welfare assistance, a fact not here in dispute, the back pay award should be reduced by the total welfare benefits he received.

In the absence of a reasoned explanation by the Commission of its decision not to mitigate the back pay by the amount of welfare and in the further absence of any controlling statutory, regulatory or decisional law, we conclude that the general principles underlying the mitigation doctrine support the city's claim. We are aware that the leading cases in this jurisdiction respecting mitigation of back pay awards made to public employees address themselves to income earned by the employee during the period of his wrongful ouster. *See, e. g., Mastrobattista v. Essex Cty. Park Comm'n*, 46 *N.J.* 138 (1965); *White v. No. Bergen Tp.*, 77 *N.J.* 538 (1978). Yet the underlying rationale of mitigation is that an employee, and particularly a public employee whose back pay award is funded by the public treasury, should be made whole. He should not, however, at public expense, be made more than whole. Welfare payments which

are not subject to a recipient's reimbursement obligation are, of course, not earned income. Nevertheless, the welfare payments here were received by the employee as a direct result of the wrongful discharge and in lieu, as it were, of income which he was not able thereafter to earn either from his municipal employer or from an alternate employer. In this posture and considered in the light of the purpose and policy of mitigation, we see no reason why the employee's net economic position following reinstatement should be enhanced by the amount of the welfare payments and thus better than it would have been had there been no discharge at all. Thus, we are satisfied that functionally and causally, the welfare payments should have been treated as earned income for purposes of mitigation.

The determination of the Civil Service Commission is modified to reduce the total back pay award by $3,204. As so modified, the determinations of the Civil Service Commission here appealed from are affirmed.