177 N.J. Super. 620 (1981)
427 A.2d 605
ROSA MILLAN, PLAINTIFF-APPELLANT,
v.
MORRIS VIEW, A COUNTY-OPERATED NURSING HOME, MORRIS TOWNSHIP, NEW JERSEY, AND MORRIS COUNTY DIVISION OF SOCIAL SERVICES NEE MORRIS COUNTY WELFARE BOARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 3, 1981.
Decided February 20, 1981.
*622 Before Judges FRITZ, POLOW and JOELSON.
Nusbaum, Stein, Goldstein & Bronstein, attorneys for appellant (Dennis J. Lenard on the brief).
*623 Lieb, Berlin & Kaplan attorneys for respondent (Thomas F. Zborowski on the brief).
John J. Degnan, Attorney General, attorney for Civil Service Commission filed a statement in lieu of brief on behalf of the Commission (William Harla, Deputy Attorney General, of counsel and on the statement).
The opinion of the court was delivered by POLOW, J.A.D.
Appellant was a building service worker at the Morris View Nursing Home operated by the Morris County Welfare Board. When she refused to comply with her supervisor's instructions to perform certain duties, claiming that they were too strenuous in view of her back condition, she was initially suspended and, two days later, discharged for insubordination. A Civil Service hearing was conducted some six months later and continued for another three months before the hearing officer found as a fact that appellant was insubordinate. He recommended that her discharge be sustained and her appeal dismissed. However, on appeal the Civil Service Commission concluded that, under the circumstances, "the appointing authority acted in an arbitrary manner when he removed appellant" and that although she had been guilty of insubordination, a serious offense, "her insubordination did not merit removal in view of all of the circumstances." Hence, the penalty was modified to impose a six-month suspension and appellant was "reinstated to her position following a suspension of six months ... [but] not ... awarded back pay." Appellant attacks the finding of insubordination as unsupported by the record and arbitrary, capricious and unreasonable, and argues, in the alternative, that she is entitled to back pay less mitigation.
We are satisfied that the Commission's finding respecting appellant's insubordination and the impropriety of the penalty imposed by the appointing authority are supported by sufficient credible evidence in the record as a whole and we will not interfere therewith. Campbell v. Civil Service Dep't, 39 N.J. *624 556, 562 (1963); Greco v. Smith, 40 N.J. Super. 182, 184-185 (App.Div. 1956).
However, the blanket, unexplained order "that appellant not be awarded back pay" presents a problem. The report and recommendations of the hearing officer were rendered on July 2, 1979, more than one year after appellant's discharge. The "decision on appeal" of the Commissioner is dated January 4, 1980, resulting in a loss of pay for more than 18 months although the suspension was limited to the maximum permitted by law, six months. N.J.S.A. 11:15-6; West New York v. Bock, 38 N.J. 500, 525 (1962). Hence, the practical effect of the Commission's ruling, no pay for the entire period until reinstatement, is equivalent to suspension for 18 months.
In justifying that result, the Commission and respondent, on this appeal, rely exclusively on Feldman v. Irvington Fire Dep't, 162 N.J. Super. 177 (App.Div. 1978), arguing that since appellant was not vindicated, reinstatement without back pay was entirely appropriate. Feldman does suggest (at 185) that back pay may be denied "`where special circumstances justly call for such action.'" The Feldman court found that "equitable considerations and the balancing of the interest of the employee against that of the public" required that the loss be borne by the employee, not the public. Id. at 185-186. Whether or not we agree with that conclusion, the Commission here articulated no equitable considerations which would justify the sanction of loss of more than 18 months back pay although the suspension is limited, as required by statute, to the six month maximum. One of the equitable considerations expressed by the Feldman court in withholding back pay was the "extraordinary delay" in prosecuting the appeal. Id. at 184. Here, no consideration was given by the Commission to the cause of the delay and whether it was attributable to petitioner herself or the administrative process.
Absent a finding by the Commission based upon sufficient credible evidence in the record to support application of "equitable considerations" by way of, for example, inordinate delays attributable to petitioner or mitigation, the Commission *625 lacks authority to ignore the clear mandate of the statutory provision limiting suspension to a six-month period. The language of the statute is unambiguous. Although adherence to its specific requirements may lead to an unpopular result under a particular set of circumstances, we lack discretion to vary legislative fiat to achieve a more desirable outcome. Our judicial function is to effectuate the legislative goal as expressed in the language of the statute. State v. Fearick, 69 N.J. 32, 37 (1976); Singleton v. Consolidated Freightways Corp., 64 N.J. 357, 362-363 (1974).
The language of Mr. Justice Cardozo, as quoted in Fearick, bears repeating here:
"... In countless litigations, the law is so clear that judges have no discretion. They have the right to legislate within gaps, but often there are no gaps. We shall have a false view of the landscape if we look at the waste spaces only, and refuse to see the acres already sown and fruitful. I think the difficulty has its origin in the failure to distinguish between right and power, between the command embodied in a judgment and the jural principle to which the obedience of the judge is due. Judges have, or course, the power, though not the right, to ignore the mandate of a statute, and render judgment in despite of it. They have the power, though not the right, to travel beyond the walls of the interstices, the bounds set to judicial innovation by precedent and custom. None the less, by that abuse of power, they violate the law...." [State v. Fearick, supra, 69 N.J. at 37-38 quoting from Cardozo, The Nature of the Judicial Process, 129]
The barren command that "appellant not be awarded back pay" was apparently based upon no consideration at all. But the Commission is not free, nor are we, to act on whim or caprice. Hence, we must remand in the interests of fairness and equity, to enable the Commission to do what it should have done. It must determine whether any considerations exist to justify loss of back pay in excess of the six-month suspension period, and, if so, to what extent. Did petitioner drag her feet and thus prolong the administrative review process? If not, how can the loss of pay in excess of the six month suspension be justified?
The Commission must also specifically concern itself with the issue of mitigation. Telesnick v. Newark, 63 N.J. 221, 224 (1973); Mastrobattista v. Essex Cty. Park Comm'n, 46 N.J. 138, 149-151 (1965). It should determine what sums were *626 actually earned or could have been earned by petitioner during the period when she should have been restored to her employment. Lowenstein v. Newark Bd. of Ed., 35 N.J. 94, 124 (1961); Miele v. McGuire, 31 N.J. 339, 350 (1960). We have no doubt that the "interests of fairness and equity" require a reasonable, affirmative effort to mitigate, making responsible attempts to obtain substitute employment and insure that the loss imposed upon the public employer will be minimized as required by law. See Talman v. Burlington Cty. College Trustees, 169 N.J. Super. 535, 540-541 (App.Div. 1979), certif. den. 81 N.J. 407 (1979); Newark v. Copeland, 171 N.J. Super. 571, 575-576 (App.Div. 1980).
Thus, we affirm the determination of the Civil Service Commission in all respects except with regard to the denial of back pay and in that connection we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.