187 N.J. Super. 147 (1982)
453 A.2d 1344
TOWN OF BELLEVILLE, RESPONDENT-APPELLANT,
v.
JOHN COPPLA AND THOMAS FESTA, PETITIONERS-RESPONDENTS, AND CIVIL SERVICE COMMISSION, DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 1982.
Decided October 7, 1982.
*148 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Frank J. Zinna, attorney for appellant (Frank J. Cozzarelli on the brief).
Fox & Fox, attorneys for respondents Coppla and Festa (Richard H. Greenstein on the brief).
*149 Irwin I. Kimmelman, Attorney General, attorney for respondent Department of Civil Service (James R. Zazzali, former Attorney General, and Janet Share Zatz, Deputy Attorney General, on the statement in lieu of brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
The background and procedural history of this matter should be set forth so that the issues are clearly understood.
Petitioners John Coppla and Thomas Festa became employed by respondent Town of Belleville in September 1977 as laborers on a water truck in Belleville's Department of Public Works. The department was responsible for overseeing, checking and repairing Belleville's water distribution system.
In October 1978 petitioners were promoted to provisional water repairers. When each accepted this position he was expected to know how to check water leaks. Specifically, their duties included "[r]epair of all pipes, checking the water leaks, any kind of cuttings which come under the mains, hydrants, services." Each held his position on a temporary basis until November 5, 1979, when apparently at the direction of the Director of Public Works, they were returned to the position of laborer. Petitioners concede that such action was lawful. Shortly thereafter, on November 17, 1979, when petitioners were the only two men on the water truck, they were requested to respond to a call about a possible water leak in the town. When they did not go to the place of the leak an assistant superintendent of public works investigated to find out the problem. Petitioners told him they did not know how to check a water leak. The assistant superintendent did not believe them. Petitioners did offer to go with him if he checked on the leak, but in fact did not respond to the call.
On November 19, 1979 the Director of Public Works sent letters of termination to petitioners. These letters were not sent in accordance with Civil Service procedure. Upon learning *150 the correct procedure the Director properly terminated petitioners as employees, effective December 4, 1979. Coppla was charged with neglect of duty, incompetency or inefficiency, and insubordination or serious breach of discipline. Festa was charged with neglect of duty and insubordination or serious breach of discipline.[1]
Petitioners challenged their removal before the Civil Service Commission (hereinafter Commission). The matter was assigned to an administrative law judge, who held an evidentiary hearing on June 10, 1980. On September 26, 1980 the judge issued his written initial decision. He made detailed findings of fact, including the following:
The appellants did know how to check for a water leak, and they were fully capable of doing so. Their claim of ignorance was tantamount to a refusal to perform an assigned task. It was a wrongful and contrary demonstration of pique motivated by their seemingly unjustified demotion five days earlier.
Though the judge concluded that both men "should be subject to disciplinary action and imposition of a penalty because of the ... violation," he decided that the penalty imposed was too harsh. Specifically he stated:
Considering the level of the appellants' titles as laborers, the two-year length of their employment, and the fact that their records were completely clear of prior disciplinary problems, the penalty of removal for the above single violation is unreasonably severe. A six-month suspension is more appropriate and is a sufficiently strong penalty under the circumstances.
Thus, the judge ordered that the town's action be modified by reducing the penalty to a six-month suspension beginning December *151 4, 1979. He further ordered back pay for the period between November 19, 1979, when the men were removed in fact, and December 4, 1979, when their removal became properly effective  reduced and mitigated by income earned during that time. Finally, he ordered petitioners reinstated retroactively as of the expiration of the six-month suspension period. Petitioners were to be considered during the time between then and the actual date of reinstatement as having been on a leave of absence without pay.
The matter was then considered by the Commission at its November 6, 1980 meeting. At that time it adopted the judge's findings of fact.[2] However, the Commission concluded that a 60-day suspension was a more appropriate penalty. In reaching this conclusion the Commission noted that each petitioner had an unblemished work record from 1977 until November 19, 1979. The Commission further ordered that back pay be awarded for the period from the end of the 60-day suspension to the actual reinstatement date. This award was to be reduced and mitigated by income earned during that period.
On January 28, 1981 the town filed a timely notice of appeal to this court.
Belleville, in its brief on this appeal, filed December 1, 1981, states "that John Coppla has not returned to employment, and that Thomas Festa has been reinstated." No further details have been supplied. We presume that Coppla, for reasons unrelated to this case, has not returned to work. In any event, petitioners seem not to contest this assertion.
Belleville raises a preliminary procedural point. The case was tried pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. The decision of the judge was received by the Civil Service Commission on September 30, 1980. N.J.S.A. 52:14B-10(c) provides in part:

*152 The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency.
The Commission met on November 6, 1980 and, as we have already indicated, adopted the judge's findings but modified the penalty. This action was within 45 days after September 30, 1980, as allowed by N.J.S.A. 52:14B-10(c). The Commission, however, did not issue its written final decision until December 17, 1980, more than 45 days after September 30, 1980.
Belleville further cites N.J.S.A. 52:14B-10(e), which provides:
Except where otherwise provided by law, the administrative adjudication of the agency shall be effective on the date of delivery or on the date of mailing, of the final decision to the parties of record, whichever shall occur first, or shall be effective on any date after the date of delivery or mailing, as the agency may provide by general rule or by order in the case. The date of delivery or mailing shall be stamped on the face of the decision.
Since the effective date of the decision was December 17, 1980, the town argues that the Commission did not comply with the 45-day requirement in N.J.S.A. 52:14B-10(c). Thus, Belleville asserts that the initial decision of the administrative law judge, including the penalty of a six-month suspension without pay, became final pursuant to N.J.S.A. 52:14B-10(c). Petitioners respond that the Commission did act within 45 days, at its meeting on November 6, 1980, and "[t]he fact that the written decision was not issued until December 17 is irrelevant."
We agree with petitioners on this point. N.J.S.A. 52:14B-10(d) requires that: "A final decision or order adverse to a party in a contested case shall be in writing or stated in the record." Here the decision was stated in the record on November 6, 1980. While it is true that for a decision to become effective, N.J.S.A. 52:14B-10(e) requires that it be delivered or mailed to the parties, the section contains no explicit time constraint. Here the Commission acted within a reasonable time after having made its decision. In the circumstances we see no basis to invalidate its action on the procedural ground raised.
*153 Belleville contends that the action of the Commission in reducing the penalty to a 60-day suspension was arbitrary, capricious and unreasonable.
In considering this contention certain basic principles should be considered. Clearly the Commission had the power to modify Belleville's action. N.J.S.A. 11:2A-1. Specifically, "[t]he Commission may, when in its judgment the facts warrant it, modify or amend the penalty imposed by the appointing authority or substitute another penalty for that imposed...." N.J.S.A. 11:15-6. Since the Commission must redetermine guilt and the penalty at a de novo hearing, it may impose a penalty without the need to first find a clear abuse of discretion by the town. West New York v. Bock, 38 N.J. 500, 519 (1962).
In reviewing a decision of the Civil Service Commission we have a limited role. Thus, ordinarily we will reverse the decision only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); Campbell v. Civil Service Dep't, 39 N.J. 556, 562 (1963). Furthermore, we accord the Commission's action a presumption of reasonableness. East Paterson v. Civil Service Dep't, 47 N.J. Super. 55, 65 (App.Div. 1957).
To support its claim that the Commission acted arbitrarily, capriciously and unreasonably, Belleville cites Henry v. Rahway State Prison, supra, 81 N.J. at 571. Henry, an employee at Rahway State Prison, was charged with falsifying a report concerning his discovery of marijuana at the prison. The employing agency found him guilty of neglect of duty and conduct unbecoming a public employee, and ordered his removal. The Commission concluded that Henry acted in good faith because he was conducting his own investigation of a scheme to sell marijuana; thus, he was guilty only of exercising poor judgment. Consequently, the Commission reduced his penalty to a 90-day suspension.
*154 The Supreme Court accepted the Commission's findings of fact but concluded that the Commission "did not consider adequately the seriousness of the charges." Id. at 580. Thus, the court ruled as follows:
... [T]he fact remains that Henry was not authorized to conduct an independent investigation. His duty was to confiscate the marijuana and submit a truthful report. The falsification of a report can disrupt and destroy order and discipline in a prison. Even if motivated by good intentions, Henry subverted the discipline at Rahway State Prison by the deliberate falsification of his report. Consequently, the Commission was arbitrary, capricious and unreasonable in reducing the penalty imposed on Henry from removal to a 90-day suspension.
Ibid. The matter was remanded to the Commission for redetermination of the penalty.
Henry's case is similar to petitioners' in that his act in violation of duty was intentional. Belleville focuses on this similarity and argues from it that dismissal for intentional misconduct is proper and the Commission's change of penalty was therefore unreasonable. However, in Henry the court made no indication of the employee's prior service record. Under N.J.S.A. 11:15-5 consideration of "record of service" as well as the "act as charged" is proper in the Commission's assessment of penalty. This court has observed that "a period of service unblemished by infractions weighs heavily in mitigation of the penalty to be imposed." Feldman v. Irvington Fire Dep't, 162 N.J. Super. 177, 182-183 (App.Div. 1978). Further, we think that Henry is distinguishable because of the special problems of discipline in a prison. Certainly any incident involving marijuana would be of vast importance in a prison.
We also observe that there is precedent to change a penalty from removal to suspension when the offender intentionally refuses to comply with a supervisor's instructions to perform certain duties. In Millan v. Morris View, 177 N.J. Super. 620 (App.Div. 1981), a building service worker in a nursing home refused to perform assigned tasks and was discharged for insubordination. A hearing officer recommended that the discharge be sustained. The Commission "concluded that, under *155 the circumstances, `the appointing authority acted in an arbitrary manner when he removed appellant' and that although she had been guilty of insubordination, a serious offense, `her insubordination did not merit removal in view of all of the circumstances.'" Id. at 623. The Commission imposed a six-month suspension. While our decision in Millan affirming the imposition of the six-month suspension does not specify what duties Millan refused to perform or in what circumstances she declined to carry out her duties, the case is authority for the appropriateness of a reduced penalty for at least some acts of insubordination. We further note that in Newark v. Copeland, 171 N.J. Super. 571 (App.Div. 1980), we upheld reinstatement of a building maintenance worker who had been dismissed for insubordination. Our basis for doing this was that the Commission had found "mitigating circumstances." In view of all the circumstances we cannot say that the Commission's reduction of the penalty from removal to a 60-day suspension was arbitrary, capricious or unreasonable. The fact that a more serious penalty, such as the six-month suspension recommended by the judge, might also be supportable does not require that we overrule the Commission's action.
The final issue raised on this appeal is the most troublesome part of this case. Belleville challenges the action of the Commission allowing back pay, subject to mitigation for income earned, beyond the 60-day period of suspension. Under the Commission's decision it made this award notwithstanding its determination that "[c]learly, appellants disobeyed a direct order from their superiors and should be disciplined for such action." Since the suspension became effective on December 4, 1979, when proper notices were served on Coppla and Festa, the back pay under the commission's order began 60 days thereafter, on February 2, 1980, and continued until each petitioner's reinstatement date.
Belleville argues that since the insubordinate nature of the men's conduct and the need for discipline were upheld by the Commission, the Commission erred in awarding back pay for the *156 period following suspension. It cites Feldman v. Irvington Fire Dep't, supra, 162 N.J. Super. at 177, as dispositive of the issue.
In Feldman a fireman was discharged for failure to report to the fire apparatus pursuant to a box alarm and for violation of sick leave procedure. The Commission found that Feldman did in fact violate department regulations with respect to both charges. It upheld the municipal action in dismissing him. On appeal we agreed that Feldman had violated department regulations but found the penalty of dismissal to be so utterly disproportionate to the offense and mitigating factors to be arbitrary and unreasonable in the circumstances. We exercised our original jurisdiction and imposed a six-month suspension without pay and ordered Feldman's immediate reinstatement.
We then considered whether Feldman was entitled to back pay from the end of the suspension period to the date of reinstatement. We stated:
A review of the cases dealing with the issue of back pay for the period of idleness pending ultimate disposition of the disciplinary determination reveals that such relief has been granted when the employee has been vindicated by a reversal on the merits of the charges which led to the suspension or removal. In fact, the legislative purpose in adopting the several statutes permitting recovery of back salary was to overcome the harsh common law rule in those cases where the public employee has ultimately been found to be innocent of the infractions which led to his suspension or dismissal.
As observed by Justice Jacobs in Mastrobattista v. Essex Cty. Park Comm'n, supra:

Current concepts of fair play in employment relationships suggest that persons in the public service who have been suspended or removed on charges later determined to be unfounded should be made whole insofar as possible; they should be entitled not only to restoration of duties but should also suffer no loss in their earnings. [146 N.J. 138 at 143] [Id. at 184-185].
We then held that "reinstatement should be accompanied by an award of back pay only where the judicial determination finds that the charges were unwarranted on the merits. It is only the innocent victim of official power who is entitled to such reimbursement." Id. at 185. While back pay is mandated for those who are innocent, back pay may be denied for employees reinstated but not exonerated on the merits if this result is *157 appropriate in the "special circumstances" of the case or as a matter of "equitable considerations." Ibid.
We agreed in Feldman that there had been at the time of our decision an "extraordinary delay" of 22 months from his suspension, and 16 months from the time, taking into account our modification, that it ended. We determined, however, that the delay was not attributable to Feldman. Nevertheless, we concluded, as follows:
We are satisfied that the special circumstances herein require the application of equitable considerations and the balancing of the interest of the employee against that of the public. It is fair and just that the loss, if any, resulting from the delay in the process of review, during which appellant rendered no services for the municipality, should be borne by him and not the public. The reinstatement shall therefore be without back pay. [Id. at 185-186].
More recently, in Millan v. Morris View, supra, 177 N.J. Super. at 620, we took a slightly different approach. There we upheld the Commission's reduction of a penalty for insubordination from dismissal to a six-month suspension. However, we questioned the Commission's "blanket, unexplained order `that appellant not be awarded back pay.'" Id. at 624. In noting that the "decision on appeal" of the Commission was dated January 4, 1980, approximately 18 months after the suspension began, we found that the practical effect of the ruling was an 18-month suspension without pay. Ibid. We observed that N.J.S.A. 11:15-6 authorizes the Commission to suspend an employee "without pay or with reduced pay, for a period not exceeding six months." Consequently, we held:
Absent a finding by the Commission based upon sufficient credible evidence in the record to support application of "equitable considerations" by way of, for example, inordinate delays attributable to petitioner or mitigation, the Commission lacks authority to ignore the clear mandate of the statutory provision limiting suspension to a six-month period. The language of the statute is unambiguous. Although adherence to its specific requirements may lead to an unpopular result under a particular set of circumstances, we lack discretion to vary legislative fiat to achieve a more desirable outcome. Our judicial function is to effectuate the legislative goal as expressed in the language of the statute. State v. Fearick, 69 N.J. 32, 37 (1976); Singleton v. Consolidated Freightways Corp., 64 N.J. 357, 362-363 (1974) [Id. at 624-625].
*158 In Millan the Commission had not followed the general rule of back pay after six months and had not articulated any reason for the denial of back pay, so we remanded the matter to the Commission
... in the interests of fairness and equity, to enable the Commission to do what it should have done. It must determine whether any considerations exist to justify loss of back pay in excess of the six-month suspension period, and, if so, to what extent. Did petitioner drag her feet and thus prolong the administrative review process? If not, how can the loss of pay in excess of the six month suspension be justified? [Id. at 625]
The results reached in Feldman and Millan are not inconsistent. Yet the cases represent somewhat different approaches to the issue of whether an employee who is not exonerated on the merits is entitled to back pay for the period following a date six months after the suspension becomes effective. It appears that the Millan decision is more supportive to such an award. The Millan court expressed a concern for the effect of N.J.S.A. 11:15-6 which we do not perceive in Feldman. Here the Commission followed the general rule in awarding back pay subject to mitigation for income earned to the extent that its decision ordered back pay from June 4, 1980 to the reinstatement dates. We do perceive a special circumstance or equitable consideration which should have caused the Commission in part to reach a different result. The record reflects a determination by the judge that petitioners were responsible for requesting a delay of approximately two months in the hearing. The hearing was originally scheduled for April 16, 1980, but at petitioners' request, characterized by the judge as "untimely," the matter was adjourned so that they could obtain consolidation of the cases and acquire an attorney. The hearing was then held June 10, 1980. It would appear that if petitioners had not sought a delay, the entire case would have been resolved two months earlier and they would have been reinstated two months earlier. In the circumstances, two months should be deducted from any period for which petitioners will receive back pay. But this special circumstance or equitable consideration cannot justify a further denial of back pay. The decision of Belleville to terminate *159 the petitioners was rejected by both the judge and the Commission. We agree that it was surely too harsh. Thus, petitioners' unemployment after June 4, 1980, though partially attributable to their own misconduct and delay, was also a product of Belleville's unsustainable response to their misconduct.
There is present here, however, a circumstance absent in both Feldman or Millan which requires a further diminution in time for which back pay should be allowed. In those cases the suspensions were each for the statutory limit of six months. Here the suspensions were for only 60 days. There is thus raised the question of whether petitioners are entitled to back pay for the period between the end of their 60-day suspensions, February 2, 1980, and the end of the statutory maximum period of suspension of six months under N.J.S.A. 11:15-6, June 4, 1980.
We see no reason why petitioners should receive any back pay for that period. The court in Millan was concerned that denial of back pay beyond six months would do violence to N.J.S.A. 11:15-6. But denial for the six-month period could have no such consequence. Further, the decision of the Commission reducing the penalty was discretionary. If the Commission adopted the recommendation of the judge for a six-month suspension we quite probably would have upheld its action. We fail to see why petitioners, whose misconduct generated the dispute, should receive pay for work not done in such circumstances.
Finally, we note that our decision does not de facto reimpose a six-month or eight-month suspension. Petitioners' work records will reflect that their suspensions were for 60 days. This may be significant in the event of future disciplinary actions. See N.J.S.A. 11:15-5. Indeed, it may be to their advantage in seeking employment elsewhere that the suspension be for a lesser period.
In summary we rule as follows. The determination of the Commission that petitioners be suspended for 60 days is *160 affirmed. Petitioners are entitled to no back pay for their suspensions until after August 4, 1980. This period is calculated by adding the initial six months for which petitioners could have been suspended without pay under N.J.S.A. 11:15-6 and the two months of delay which they caused. They are to receive back pay, subject to reduction and mitigation for income earned, after that date until the date of their reinstatement. Of course, if petitioner Festa did not accept reinstatement, his right to back pay thereafter terminated. The matter is remanded to the Commission for the award to be determined. We do not retain jurisdiction.
NOTES
[1] Festa was also charged with violation of a town ordinance which requires municipal employees to be residents of the town. The administrative law judge found that Festa made his nonresidency known when he was hired and "relied upon the apparent authority of a member of the governing body and director of the Department of Public Works to legally hire him under the circumstances...." The judge concluded that the town was estopped from removing or otherwise disciplining Festa because of his nonresidence. The order at the end of the initial decision did not address that issue, nor did the Commission's final determination. The town does not raise the issue in its brief on appeal. Thus, we consider that Belleville has abandoned the contention.
[2] It also added as an explicit finding that petitioners had never previously been involved in disciplinary problems. The judge in his conclusions, but not findings, had so stated.