**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3150-18T3

IN THE MATTER OF
WILLIAM SHORTER, NEW
JERSEY DEPARTMENT OF
CORRECTIONS.

_____

Argued March 9, 2020 – Decided May 4, 2020

Before Judges Sabatino and Natali.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2018-1384 and 2019-0081.

Christopher J. Hamner, Deputy Attorney General, argued the cause for appellant New Jersey Department of Corrections (Gurbir S. Grewal, Attorney General, attorney; Donna S. Arons, Assistant Attorney General, of counsel; Christopher J. Hamner, on the briefs).

Michael P. DeRose argued the cause for respondent William Shorter (Crivelli & Barbati, LLC, attorneys; Donald C. Barbati and Michael P. DeRose, on the brief).

Benjamin H. Zieman argued the cause for respondent New Jersey Civil Service Commission (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Benjamin H. Zieman, on the brief).

PER CURIAM

In this civil service matter, the New Jersey Department of Corrections (DOC) appeals from the June 22, 2018 determination of the Civil Service Commission (CSC) that reduced the penalty imposed upon respondent William Shorter, a Correction Sergeant at South Woods State Prison, after his random drug screen tested positive for a metabolite of tetrahydrocannabinol (THC)[1], the psychoactive ingredient in cannabis. After Shorter appealed, the CSC affirmed the disciplinary findings but modified the penalty issued by the Administrative Law Judge (ALJ) from dismissal to a 120-day suspension. The CSC also awarded Shorter back pay, benefits and seniority after his suspension and until his reinstatement. The DOC also appeals the CSC's February 8, 2019 decision denying its motion for reconsideration and for a stay.

---

[1] When Shorter tested positive for THC, it was classified as a Schedule I controlled substance in New Jersey. N.J.S.A. 24:21-5(e)(17) (2017); see also 21 U.S.C. § 812(c)(c)(17) (2017) (classifying THC, without exception, as a Schedule I substance under the federal Controlled Substances Act). The classification of THC has since been amended, effective August 9, 2019, to exclude "hemp or a hemp product cultivated, handled, processed, transported, or sold pursuant to the New Jersey Hemp Farming Act." N.J.S.A. 24:21-5(e)(17) (2020); see also 21 U.S.C. § 812 (c)(c)(17) (2020) (defining THC at the federal level to exclude hemp with a THC concentration of 0.3 percent or less).

2

I.

At the time the disciplinary charges were filed, Shorter was a seventeen-year veteran of the DOC, who had earned various commendations, including working during an emergency, assisting in saving the life of an inmate who had been stabbed, and "gathering information [related to] a major drug bust." During his long tenure with the DOC, he maintained a largely unblemished disciplinary record with a single recorded disciplinary incident for being late to work in December 2003 due to a power outage which prevented his alarm from functioning.

When he first became employed with the DOC, Shorter acknowledged receipt of several departmental policies, including the DOC's Law Enforcement Personnel Rules and Regulations, which prohibited employees from using any illegal drug or controlled dangerous substance, either on or off duty. He also received various Human Resources Bulletins, which included information on the DOC's random urine drug screening procedures and the penalties for employees who test positive.

A-3150-18T3

On September 7, 2017, Shorter purchased a bottle of "CBD oil"[2] from Relievus Pain Management, an interventional pain management practice, where Shorter was being treated by Young J. Lee, M.D., and Nurse Practitioner Russell M. Little for pain resulting from "degenerative arthritis in his spine" and herniated discs. During his treatment, Shorter underwent multiple injections, including nerve blocks. As these prior efforts to relieve his pain proved unsuccessful, and because Shorter "wanted to get better without the use of narcotics," Dr. Lee recommended Shorter use CBD oil, represented to him as a legal product which he claimed would help with the inflammation in his spine. Mindful of the DOC's random drug screening policy, Shorter asked Little whether the CBD oil could potentially come up as positive on a drug test. Little told Shorter the CBD oil "will not show up as a positive for THC" on the drug test, relying on information he had been told by the "head doctors" at Relievus.

---

[2] CBD, or cannabidiol, is "one of the 'unique molecules found in the <u>Cannabis sativa</u> plant." <u>Horn v. Med. Marijuana, Inc.</u>, 383 F. Supp. 3d 114, 119 (W.D.N.Y. 2019) (internal citation omitted). The <u>Cannabis sativa</u> plant is the plant from which marijuana and hemp are derived. <u>Ibid</u>. The difference between the two is that "drug-use cannabis is produced from the flowers and leaves of certain strains of the plant, while industrial-use [hemp] is typically produced from the stalks and seeds of other strains of the plant." <u>Ibid</u>. This leads to differences in the concentration of THC in each variety.

Shorter did not visit the product's description page on the Relievus website, and therefore did not see that the CBD oil contained "0.3 percent THC."

Taking the CBD oil required Shorter to place "[f]ifteen droplets underneath [his] tongue twice a day, once in the morning and once at night." Shorter began taking the CBD oil on the morning of September 8, 2017 and continued to do so through the morning of September 12, 2017.

That day, Shorter was directed to the report to the Special Investigations Division, where he was informed that he had been selected for a random urine screen. Prior to providing his urine sample, Shorter signed a form acknowledging that a positive test result would lead to his dismissal and permanent bar from serving as a law enforcement officer in New Jersey. He also filled out a form which required him to list all prescription and non-prescription medications he had taken in the past thirty days. Shorter listed several medications but claims that he forgot to list the CBD oil he began taking four days earlier.

The State lab performed two tests on Shorter's urine sample, which detected twenty-three nanograms (ng) per milliliter (mL) of a THC metabolite. The "industry accepted" cut-off level for the THC metabolite and used by the State of New Jersey for testing purposes is fifteen nanograms ng/mL, which is

intended to account for "casual, accidental exposure." When a medical review officer cross-referenced Shorter's results with his medication form, none of the listed medications accounted for the positive test result. After learning of the positive result, Shorter provided the DOC with a note on a Relievus prescription pad stating that he had been "prescribed CBD oil." Shorter denied ever using marijuana or any other illicit substance. In this regard, he had previously successfully passed ten random drug screens during the course of his career.

Despite his explanation and denial, the DOC served Shorter with a Preliminary Notice of Disciplinary Action seeking his removal as a correctional officer because he tested positive for THC. Specifically, Shorter was charged with: 1) conduct unbecoming a public employee, N.J.A.C., 4A:2-2.3(a)(6); 2) other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); 3) conduct unbecoming a public employee, Human Resource Bulletin (HRB) 84-17: C-11; 4) reporting for duty while under the influence of intoxicating liquor or drugs, HRB 84-17: C-2; 5) use, possession, or sale of any controlled dangerous substance, HRB 84-17: C-30; 6) violation of a rule, regulation, policy, procedure, order or administrative decision, HRB 84-17: E-1. Shorter waived his right to a departmental hearing and was subsequently served a Final Notice of

Disciplinary Action which terminated his employment with the DOC effective November 7, 2017.

Shorter subsequently appealed his removal to the Office of Administrative Law (OAL), and the matter was heard as a contested matter before an ALJ on March 23, 26, and 27, 2018. Twelve witnesses testified, including two experts in the field of toxicology: Shorter's expert, Gary Lage, Ph.D., and the DOC's expert, Robert Havier, Ph.D. In addition, Shorter called several character witnesses, including current and former DOC employees, all of whom testified that they had never seen or heard Shorter talk about using illegal drugs and that he performed his duties in an exemplary fashion.

Dr. Lage concluded to a reasonable degree of scientific certainty that Shorter's positive test result was "not consistent with marijuana use" and likely caused by the CBD oil he had taken that morning. Dr. Lage noted that the CBD product Shorter was taking had been derived from "hemp oil extract," which, unlike pure CBD oil, contains small levels of THC. Dr. Lage also testified that he visited the Relievus website and determined that the CBD oil Shorter ingested was "an extract of hemp," which "by definition . . . would contain small quantities of THC." Relying on this information along with the "low levels of the marijuana metabolite" detected in his urine, Dr. Lage concluded that

Shorter's positive test result was entirely "consistent with the product that [he] was using." Significantly, Dr. Lage also confirmed that the level of THC in the hemp-based product Shorter used was "insufficient to produce a psychoactive effect."

Dr. Havier testified that although Shorter's sample yielded a positive test result for THC, it was impossible to identify the exact source of the THC detected. Dr. Havier conceded, however, that it was a "possibility" that the THC metabolites detected in his urine "came from the hemp oil extract."

On May 8, 2018 the ALJ issued her decision. She found both expert witnesses to be credible but found Dr. Havier's testimony to be "more persuasive." The ALJ specifically found that Shorter was not credible regarding his claim that he "forgot" to list the "CBD oil" on the medication form he completed immediately prior to his urine screen. The ALJ based its adverse credibility findings on the number of times and unique way the CBD oil was ingested by Shorter and the fact that he had listed other medications on the form. The ALJ concluded that the DOC had met its burden of proof on all the disciplinary charges and found that "the only appropriate penalty" for Shorter's positive drug test was termination. The ALJ explained that the DOC's drug

A-3150-18T3

policy "does not call for a range of discipline" and thus "removal is the only option for a violation of the drug testing policy."

Shorter appealed to the CSC. After conducting a review of the record, the CSC adopted the ALJ's factual and credibility findings and agreed that the DOC had met its burden of proof with respect to all the charges. As noted, the CSC, however, modified Shorter's sanction from termination to a 120-calendar-day suspension. In doing so, the CSC relied on principles of progressive discipline, citing Shorter's long service, nearly untarnished disciplinary record, and the indication in the record that the CBD oil "likely" was the cause of his positive test result as mitigating factors that warranted a reduced penalty. Specifically, the CSC found:

> In the instant matter, [Shorter] had no prior major disciplinary actions since his employment began in May 2001 and his record indicates that he received one minor disciplinary action, a written reprimand in 2003. Moreover, given the actual incident in question, the Commission does not find removal to be appropriate under these circumstances. In this regard, while it is clear [Shorter] tested positive for small amounts of THC, the record also indicates that CBD oil, for which [Shorter] had a valid prescription[3] likely caused the positive result. Further, while [Shorter] should have indicated his CBD oil use on his medication form, in

---

[3] On reconsideration, the CSC acknowledged that the note Shorter received from Little was not an actual prescription but indicated that error did not affect its decision.

the present case his failure to do so should not result in his termination. Accordingly, the [CSC] imposed a 120-calendar[-]day suspension, which will serve as an indication that any future infractions committed by [Shorter] will potentially subject him to removal from employment. In addition, [Shorter] is advised that he must properly and fully complete any future medication forms given as part of his drug screening.

After the CSC denied the DOC's motion for reconsideration and a stay of the order restoring Shorter to his position, this appeal followed.

## II.

The DOC argues that the CSC's decision to reduce Shorter's disciplinary sanction from removal to a 120-day suspension was arbitrary, capricious, and unreasonable and therefore must be reversed. The DOC bases its argument on its zero-tolerance drug use policy, which mandates removal for those employees who test positive for certain illegal substances. It further contends that the CSC erred in failing to defer to the DOC's expertise as a law enforcement agency on matters pertaining to safety and security. Moreover, the DOC asserts that the CSC failed to explain its finding that CBD oil was the likely cause of Shorter's failed drug screen. We disagree with all of these arguments.

Our review of a final agency decision is limited, and we "do not ordinarily overturn such a decision 'in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence.'" In re

10

Carter, 191 N.J. 474, 482 (2007) (citation omitted). Further, we may not substitute our judgment for that of the agency's when "substantial credible evidence supports [the] agency's conclusion . . . ." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citations omitted). Instead, we "defer to an agency's expertise and superior knowledge of a particular field." Ibid. (citations omitted). "While we must defer to the agency's expertise, we need not surrender to it." N.J. Chapter of Nat'l. Ass'n of Indus. and Office Parks v. N.J. Dep't of Envt'l Prot., 241 N.J. Super. 145, 165 (App. Div. 1990). An appellate court therefore does not automatically accept an agency's interpretation of a statute or a regulation, and reviews strictly legal questions de novo. Bowser v. Bd. of Trs., Police & Fireman's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

We review an agency's disciplinary sanction under a similar deferential standard and only modify a sanction "when necessary to bring the agency's action into conformity with its delegated authority." In re Herrmann, 192 N.J. 19, 28 (2007) (quoting In re Polk, 90 N.J. 550, 578 (1982)). A reviewing court "has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency." Ibid. (quoting Polk, 90 N.J. at 578). When reviewing an agency's disciplinary action, we consider "whether such

A-3150-18T3

punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29 (quoting Polk, 90 N.J. at 578).

In reviewing the penalty imposed, the CSC has long utilized the concept of progressive discipline, which is based on the notion that "past misconduct can be a factor in the determination of the appropriate penalty for present misconduct." Id. at 29 (citation omitted). The CSC has applied progressive discipline in two different ways: to "support the imposition of a more severe penalty for a public employee who engages in habitual misconduct," id. at 30, or to reduce the penalty for "an employee who has a substantial record of employment that is largely or totally unblemished by significant disciplinary infractions," id. at 33. However, the CSC is not required to consider progressive discipline when employee misconduct is "so serious that removal is appropriate notwithstanding a largely unblemished prior record." Carter, 191 N.J. at 484.

III.

Here, the DOC points to its statutory mission as a law enforcement agency in support of its contention that the CSC was bound to defer to its zero-tolerance drug policy. It specifically relies on Bowden v. Bayside State Prison, 268 N.J. Super. 301, 306 (App. Div. 1993) for the proposition that courts should defer to

the "expertise of the corrections officials" in managing their institutions. Bowden is not controlling as it is factually distinguishable from the circumstances here.

In Bowden, we concluded that the Merit System Board[4] improperly reduced a corrections officer's penalty from removal to a six-month suspension where he "played cards with inmates for cigarettes." Id. at 303. We stressed that "it is the appraisal of the seriousness of the offense which lies at the heart of the matter." Id. at 305. In doing so, we found that the officer's conduct "subverted the discipline" at the prison and that "the Board did not adequately consider the seriousness of the charges" when it reduced the officer's sanctions. Id. at 306.

Here, as the CSC correctly notes, the DOC has not established that Shorter's conduct, based only on his failed drug screen, "subverted the discipline" at the prison. Indeed, the DOC provided no evidence that Shorter was intoxicated or exhibited any psychoactive symptoms from the THC in the CBD oil during the performance of his duties. Shorter also did not engage in any illicit activities with or around inmates at the prison, unlike the officer in

---

[4] Pursuant to P.L. 2008 c. 29, the Merit System Board was renamed the CSC, effective June 30, 2008.

A-3150-18T3

Bowden. Shorter's conduct (and his prior disciplinary record) clearly did not rise to the level of impropriety engaged in by the officer in Bowden, as he only began taking the CBD oil after consulting multiple licensed medical professionals.

Moreover, contrary to the DOC's argument that "decisions of the DOC in determining what is unacceptable behavior in its staff must be given higher deference than other agencies," the New Jersey Supreme Court has noted that "there is no statutory authority for a law enforcement exception to the normal standard of Commission review." Henry v. Rahway State Prison, 81 N.J. 571, 578 (1980).

In Henry, the Court considered a similar DOC argument regarding two corrections officers whose DOC-ordered removals were reduced to suspensions after review by the CSC. Id. at 574. Citing safety and security policy reasons, the DOC contended that a different standard of review applied to law enforcement agencies, which required the CSC to "affirm the penalty imposed by an appointing authority absent an abuse of discretion." Id. at 578. The Court concluded there was no statutory basis for this special standard of review, observing that it was "for the Legislature, not the judiciary, to decide whether the civil service law should provide that the Commission must sustain

14                                                                    A-3150-18T3

disciplinary actions of law enforcement or other agencies absent an abuse of discretion." Id. at 579; see also Thurber v. City of Burlington, 387 N.J. Super. 279 (App. Div. 2006) (affirming the Merit System Board's reduction of city administrator's sanction of termination to a six-month suspension for reckless driving); Belleville v. Coppla, 187 N.J. Super. 147 (App. Div. 1982) (affirming the CSC's reduction of municipal employees' sanction of removal to a sixty-day suspension for insubordination and neglect of duty but remanding for calculation of back pay); N.J. Dep't of Corr. v. Torres, 164 N.J. Super. 421 (App. Div. 1978) (affirming the CSC's reduction of corrections officer's sanction of removal to a sixty-day suspension for sleeping on duty).

Here, the DOC essentially renews its argument in Henry, asserting that safety and security policy considerations require the CSC to apply the DOC's zero-tolerance drug policy regardless of the CSC's authority to conduct a de novo review of the imposed penalty. We reject that argument. As noted in Henry, there is no statutory basis for such a special standard of review.

In our view, the CSC's decision to downgrade Shorter's penalty cannot fairly be characterized as "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." In re Herrmann, 192 N.J. at 28-29 (2007) (quoting Polk, 90 N.J. at 578). Shorter had a nearly

15                                                                    A-3150-18T3

unblemished disciplinary record during his seventeen years of service at the DOC. The record supports the CSC's observation that, given the small amounts of THC detected in his sample, it was entirely possible that Shorter's positive result was caused by the CBD oil recommended to him by his pain management doctor.

In this regard, Shorter's expert, Dr. Lage, testified that the "low levels" of THC found in Shorter's urine "most likely resulted from his use of CBD oil." Dr. Lage based this opinion on the fact that the product Shorter was using "was an extract of hemp," which would contain "small quantities of THC," and the product's website confirmed this fact. While the DOC's expert, Dr. Havier, emphasized that there was no way of conclusively determining what the source of the THC was, he also admitted that "the hemp oil could produce it."

In her findings of fact, the ALJ concluded "both Dr. Havier and Dr. Lage testified credibly," although she found Dr. Havier to be "more persuasive." The ALJ made no factual finding regarding the cause of the positive test result. Because both expert witnesses testified that the positive result could have been caused by the CBD oil and the ALJ made no negative credibility determinations regarding either of those witnesses, the record supports the CSC's conclusion.

Further, as noted, the CSC was not bound by the DOC's findings in determining the appropriate penalty as the DOC's decision was subject to de novo review by the CSC. In doing so, the CSC properly considered the mitigating circumstances of Shorter's positive drug screen, including the fact that he relied on the advice of medical professionals in ingesting CBD oil shortly before the test. See Henry, 81 N.J. at 580 (finding that the CSC's reduction of a penalty from removal to suspension was warranted where it "properly considered . . . mitigating factors"). We are also mindful of the CSC's experience in adjudicating a wide span of disciplinary cases at all levels of government, including both law enforcement and non-law enforcement employees.

Finally, we reject the DOC's concerns that the CSC's decision, and our affirmance, will "permit other custody officers to flout laws governing use of controlled substances, leading to a breakdown in employee morale and discipline, and jeopardizing the DOC's ability to fulfill its statutory obligations." We are satisfied that the idiosyncratic facts presented before the ALJ regarding Shorter's health condition, his documented course of treatment, and the testimony from his healthcare provider and expert are sufficiently unique such that we consider any concern that our, or the CSC's, decision will foster wide-

17

spread illicit drug use by correctional officers and adversely affect the DOC's statutory mission as unsupported and overstated.

Moreover, we conclude it is unlikely that, as the DOC argues, Shorter's suspension would "lead to a general breakdown in employment discipline" and would "sow[] confusion among custody officers as to what 'zero tolerance' means . . . ." While we acknowledge that Shorter has not challenged his penalty by way of cross-appeal, we note that effective January 1, 2019, the Agriculture Improvement Act of 2018, Pub. L. 115-334 removed "[THC] in hemp," or hemp-derived products containing a THC level of "not more than 0.3 percent" from the Controlled Dangerous Substances Act, 21 U.S.C. 812(c). The New Jersey Legislature passed a similar statute effective August 9, 2019, the New Jersey Hemp Farming Act, P.L. 2019, c. 238, which permitted the manufacture and sale of hemp products. It also amended the definition of THC under Schedule I of the controlled dangerous substances statute, N.J.S.A. 24:21-5(e)(17), to exclude "hemp or a hemp product cultivated, handled, processed, transported, or sold pursuant to the New Jersey Hemp Farming Act," effective August 9, 2019. As such, we reject the DOC's assertion that Shorter's positive test for a substance that it appears he can now obtain legally at the state and federal level sows confusion regarding the DOC's disciplinary policies.

A-3150-18T3

Equally important in this regard is the fact that the CSC's sanction was hardly <u>de minimis</u>. To the contrary, Shorter was severely penalized with a lengthy suspension without pay for failing to accurately complete the medication form, a disciplinary action that remains on his employment record and which will undoubtedly impact the DOC's consideration under progressive discipline principles should Shorter commit any future violations. Under these circumstances, we conclude the CSC did not abuse its discretion in reducing Shorter's penalty from dismissal to a 120-day suspension.

To the extent we have not addressed any of the DOC's arguments it is because we have concluded they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3150-18T3