225 N.J. Super. 341 (1988)
542 A.2d 498
JOHN DIMARIA, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1988.
Decided May 31, 1988.
*343 Before Judges PRESSLER, BILDER and SKILLMAN.
Frank T. Luciano argued the cause for appellant.
Juan J. Gonzalez, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel and Juan J. Gonzalez, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*344 Appellant intermittently held the position of borough attorney for the Borough of Lodi on a part-time basis for approximately twenty-five years. From 1980 to 1983 he received an annual salary of $18,000. Appellant also billed the borough on a voucher basis for any legal services which he rendered in addition to attendance at meetings, preparation of routine documents and legal advice. In October 1983 the Lodi Borough Council adopted an ordinance providing for the borough attorney to be paid a fixed annual salary of $55,000 per year for all the borough's legal services, commencing January 1, 1984. At that time, appellant was sixty-three years old. On January 1, 1986, appellant retired. A few months later, the Borough of Lodi adopted an ordinance which provided that the new borough attorney would be compensated by fees approved by the governing body.
In anticipation of his retirement, appellant applied to the Public Employees' Retirement System (PERS) for a pension based on the $55,948 salary earned during his last year as borough attorney.[1] However, the Board of Trustees of PERS (the Board) voted to limit the "compensation" to be used for calculating appellant's pension to the $18,000 salary paid him from 1980 to 1983 plus 15% increases for 1984 and 1985. The Board based its decision upon N.J.S.A. 43:15A-6(r), which provides that an employee's "compensation" for purposes of calculating the size of a PERS pension "... shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement."
At appellant's request, a hearing was held before an Administrative Law Judge (ALJ). On June 25, 1987, the ALJ issued an initial decision recommending that appellant's pension should be calculated on the basis of his last year's salary of $55,948. The *345 ALJ concluded that an administrative regulation adopted by the Board precluded it from even considering whether the increase in appellant's salary was "granted primarily in anticipation of retirement" unless an increase in excess of 15% was granted in his last year of employment. Since appellant's increase in salary from $18,000 to $55,000 occurred in the next to last year of his employment, the ALJ determined that the Board was powerless to consider whether that increase had been granted primarily in anticipation of his retirement.
The Board rejected this recommended decision, concluding that its regulations do not preclude consideration of whether an increase in salary prior to the last year of employment was granted primarily in anticipation of retirement. It further concluded, based on its own review of the record, that appellant's salary had been increased from $18,000 to $55,000 primarily in anticipation of his retirement. Therefore, the Board reaffirmed its original decision.
Appellant argues that (1) the Board failed to issue a final decision within the time allowed by N.J.S.A. 52:14B-10(c), and therefore the initial decision of the ALJ was automatically adopted as the decision of the agency; (2) the Board's own regulations only permit consideration of salary increases in the year immediately preceding retirement, and therefore the Board was precluded from considering whether appellant's salary increase two years before retirement was granted primarily in anticipation of retirement; and (3) there was a lack of substantial credible evidence to support the Board's finding that the increase in appellant's salary was granted primarily in anticipation of his retirement.

I
N.J.S.A. 52:14B-10(c) provides in relevant part that:
... The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, *346 the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency.... For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension.
The ALJ's decision was received by the Board on June 26, 1987. On August 12, 1987, the Director of the Division of Pensions and the Director of the Office of Administrative Law entered an order extending the Board's deadline for issuing a final decision to August 24, 1987. The Secretary of the Board sent a letter to the parties on August 24, 1987, notifying them that the Board had rejected the ALJ's decision and reaffirmed its own original decision. However, this decision contained no findings of fact or conclusions of law. It merely announced the Board's ultimate conclusion and stated that "[t]he Board had directed the Secretary to draw up proposed findings of fact and conclusions of law consistent with its decision which will be presented to the Board at its next meeting for discussion and review." After rejecting an initial draft, the Board issued its "final administrative determination" on October 27, 1987, which included findings of fact and conclusions of law.
Appellant argues that the Board's decision issued on August 24, 1987 failed to comply with N.J.S.A. 52:14B-10(d) and thus cannot be relied upon to establish compliance with the time deadline imposed by N.J.S.A. 52:14B-10(c). N.J.S.A. 52:14B-10(d) provides in relevant part:
A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated....
Appellant argues that an agency must issue a "final decision" within the time allowed by N.J.S.A. 52:14B-10(c) and that a decision which does not include "findings of fact and conclusions of law," as required by N.J.S.A. 52:14B-10(d), is not a "final decision." See N.J.A.C. 1:1-18.6(a). Hence, appellant urges that the ALJ's decision must be deemed to have been adopted as the agency's final decision.
The objective of N.J.S.A. 52:14B-10(c) is "to encourage prompt consideration and disposition of contested cases." King *347 v. New Jersey Racing Com'n, 103 N.J. 412, 419 (1986). However, the device adopted by the Legislature to achieve this objective may result in the automatic approval of an ALJ's initial decision which, as in this case, is directly contrary to the agency head's decision. Therefore, the automatic approval mechanism of N.J.S.A. 52:14B-10(c) "should be applied with caution." King v. New Jersey Racing Com'n, supra, 103 N.J. at 422, quoting Aurentz v. Planning Bd. of Little Egg Harbor Tp., 171 N.J. Super. 135, 142 (Law Div. 1979).
N.J.S.A. 52:14B-10(c) states that an agency head must "adopt, reject or modify" an ALJ's recommended report and decision within 45 days. However, N.J.S.A. 52:14B-10(c) does not specifically state that an agency head can "adopt, reject or modify" an ALJ's recommended decision only by issuance of a final decision in full conformity with N.J.S.A. 52:14B-10(d). Therefore, we hesitate to read this requirement into N.J.S.A. 52:14B-10(c).
Furthermore, even if the provisions of N.J.S.A. 52:14B-10(d) were read into N.J.S.A. 42:14B-10(c), this would not require us to set aside an agency head's decision which was timely but failed to include findings of facts and conclusions of law and to deem adopted in its place an ALJ's recommended decision which the agency head had rejected. As the Court stated in King v. New Jersey Racing Com'n, supra:
[W]here the agency takes action that addresses the merits of the ALJ's initial decision within the statutory time period, which action is later determined by a court to be legally ineffective due to a non-substantive error or procedural mistake made by the agency, the agency should be permitted to take remedial steps to cure the deficiency and to issue a decision. [103 N.J. at 421].
When an administrative agency's decision is not accompanied by the requisite findings of fact and conclusions of law, the usual remedy is to remand the matter to the agency to correct this deficiency. See, e.g., Perez v. Pantasote, Inc., 95 N.J. 105, 118-120 (1984); Kotlarich v. Ramsey, 51 N.J. Super. 520, 543 *348 (App.Div. 1958). If the Legislature had intended in enacting the Administrative Procedure Act to depart from this generally accepted remedy for an agency's failure to provide required findings of fact and conclusions of law, it could be expected to have expressed that intent in clear and unequivocal terms. See White v. North Bergen Tp., 77 N.J. 538, 559 (1978); Wayne Tp. v. Ricmin, Inc., 124 N.J. Super. 509, 515 (App.Div. 1973). Therefore, we conclude that the Board's failure to include findings of fact and conclusions of law in its decision issued within the time allowed by N.J.S.A. 52:14B-10(c) does not require that decision to be set aside and the ALJ's recommended decision to be deemed adopted in its place.[2]
This conclusion is supported by King v. New Jersey Racing Com'n, supra. In that case, a decision of the Racing Commission rejecting an ALJ's recommended decision was set aside on appeal due to a lack of a legally constituted quorum. However, the Court rejected appellant's argument that the invalidation of the agency's action triggered the automatic approval provision of N.J.S.A. 52:14B-10(c). The Court stated that it did not believe the Legislature intended automatic approval of an ALJ's decision "when this would serve only to frustrate the Commission's regulatory responsibility without any compensatory benefit in terms of overcoming any serious agency derelictions." 103 N.J. at 424. This observation is equally appropriate in the present setting. See also Belleville v. Coppla, 187 N.J. Super. 147, 151-152 (App.Div. 1982) (rejecting argument that automatic approval under N.J.S.A. 52:14B-10(c) was triggered by agency's failure to send its written decision to the parties within 45 days of receipt of the ALJ's recommended decision).
*349 We add a cautionary comment. It is vitally important that an agency issue findings of fact and conclusions of law in compliance with N.J.S.A. 52:14B-10(d), and that it do so expeditiously. An administrative agency's explanation of the reasons for its decision is required not only for appellate review but also to assure the parties that their factual allegations and legal arguments have been fully considered. See Riverside General Hospital v. N.J. Hospital Rate Setting Com'n, 98 N.J. 458, 468 (1985); Application of Howard Savings Institution of Newark, 32 N.J. 29, 52(1960). Therefore, this opinion should not be understood to condone delay in an agency's issuance of findings of fact and conclusions of law. In fact, we suggest that the Legislature consider amending the Administrative Procedure Act to place an outside limit on the time within which an agency head must issue findings and conclusions.[3]

II
Under N.J.S.A. 43:15A-61, a veteran such as appellant is eligible for a pension allowance based on one half of his last year's compensation. N.J.S.A. 43:15A-6(r) defines "compensation" as follows:

*350 "Compensation" means the base or contractual salary, for services as an employee, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement. ...[4]
Thus, the Board may only accept pension contributions and grant pension benefits based on a member's "compensation" as defined by N.J.S.A. 43:15A-6(r).
The Board has adopted administrative regulations to implement this statutory responsibility. Appellant relies upon N.J.A.C. 17:2-4.1(e) and N.J.A.C. 17:1-4.18 of these regulations in support of his argument that the Board exceeded its authority in considering whether his salary increase was granted primarily in anticipation of retirement. N.J.A.C. 17:2-4.1(e) provides:
All claims involving an increase in compensation of more than 15 percent over that of the previous year, as reported to the retirement system, shall be investigated. Those cases where a violation of the statute is suspect shall be referred to the Board.
N.J.A.C. 17:1-4.18 provides:
(a) In computing retirement benefits salary increments in excess to 15 percent over the previous year's salary preceding retirement may be considered as possibly a violation of the statute governing the definition of final compensation and all such cases should be investigated.
(b) Those cases where a violation of the statute is suspected shall be referred to the respective board or commission.
Appellant's position, with which the ALJ agreed, is that these regulations restrict the Board and the staff of the Division of Pensions to the investigation of salary increases of more than 15% which occur in the last year of employment preceding retirement. Appellant argues that no other increase in compensation may be excluded from the calculation of pension benefits on the grounds that it was granted in anticipation of retirement.
*351 The Board properly rejected this argument. The Legislature has imposed an affirmative obligation upon the Board to exclude from "compensation" any "salary adjustments which are granted primarily in anticipation of the member's retirement." This statutory exclusion is not limited to salary increases granted in the year immediately preceding retirement. The regulations adopted by an administrative agency must conform with its enabling legislation. N.J. Chamber of Commerce v. N.J. Election Law Enforcement Com'n, 82 N.J. 57, 82 (1980); Bd. of Trustees of Teachers' Pension & Annuity Fund v. LaTronica, 81 N.J. Super. 461, 470 (App.Div. 1963), certif. den. 41 N.J. 587 (1964). Therefore, if the Board's regulations precluded the exclusion from "compensation" of a salary adjustment granted primarily in anticipation of retirement before the year preceding retirement, the regulations would be inconsistent with N.J.S.A. 43:15A-6(r) and hence invalid.
However, we are satisfied that the Board's regulations can be construed in a manner consistent with N.J.S.A. 43:15A-6(r). First, we note that the Board itself has rejected appellant's restrictive interpretation of its regulations. An agency's interpretation of its own regulations is entitled to substantial deference. Petition of Adamar of New Jersey, 222 N.J. Super. 464, 469-470 (App.Div. 1988); In re Appeal of Lembo, 151 N.J. Super. 242, 249 (App.Div. 1977). Therefore, the Board's interpretation of N.J.A.C. 17:2-4.1(e) and N.J.A.C. 17:1-4.18 should be followed, unless the language of the regulations is not reasonably susceptible to that interpretation.
N.J.A.C. 17:2-4.1(e), the subsection of the Board's regulation primarily relied upon by appellant and the ALJ, must be read within the context of the entire regulation. N.J.A.C. 17:2-4.1 provides in its entirety as follows:
(a) Only a member's base or contractual salary, plus the value of maintenance, if applicable, shall be subject to pension and group life insurance contributions and creditable for retirement and death benefits in the system.

*352 (b) The board shall reserve the right to question any salary to determine its creditability where it is evident from the record that a salary reported for benefits includes extra compensation.

(c) Such extra compensation shall be considered not creditable for benefits and all contributions made thereon shall be returned without interest.
(d) Some of the forms of compensation that have been defined as extra compensation are as follows: overtime, bonus, longevity lump sum payments, individual retroactive salary adjustments or individual adjustments to place a member at maximum in his salary range in the final year of service, increments granted for retirement credit or in recognition of the member's forthcoming retirement or in recognition of the member's years of service in the community.
(e) All claims involving an increase in compensation of more than 15 percent over that of the previous year, as reported to the retirement system, shall be investigated. Those cases where a violation of the statute is suspect shall be referred to the Board. [Emphasis added].
As we read N.J.A.C. 17:2-4.1, subsection (b) sets forth the authority of the Board and the staff of the Division of Pensions acting on its behalf to question any compensation which may not be creditable for pension purposes. Subsection (d) indicates, in conformity with N.J.S.A. 43:15A-6(r), that one category of compensation which is not creditable for pension purposes is an increment granted in anticipation of retirement. Finally, subsection (e) directs that any increase of more than 15% over the previous year shall be investigated. This directive is not limited to 15% increases in the year immediately preceding retirement. Moreover, the fact that N.J.A.C. 17:2-4.1(e) mandates that any increase of more than 15% be investigated does not preclude the Board or the staff of the Division of Pensions from questioning other salary adjustments to determine whether they have been made in anticipation of retirement. And while the language of N.J.A.C. 17:1-4.18 is somewhat different from that of N.J.A.C. 17:2-4.1(e), we conclude that the two sections have the same objective and therefore should be read in pari materia. Cf. Mimkon v. Ford, 66 N.J. 426, 433-434 (1975). Therefore, we reject the ALJ's conclusion that the Board's regulations precluded it from considering whether the increase in appellant's salary from $18,000 to $55,000 was granted primarily in anticipation of his retirement.

*353 III
A factual determination of an administrative agency will be disturbed on appeal only if it is not supported by substantial credible evidence in the whole record. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980).[5] The Board made the following findings in concluding that the increase in appellant's salary was granted in anticipation of his retirement:
[I]mmediately after petitioner retired, his replacement, although paid $55,000 per year, worked on only a part-time basis and only worked for six months; ... the next attorney who filled the position was not paid on a salary basis at all, but was paid on a voucher basis, the same basis used to pay petitioner prior to 1984. Thus, if the Borough actually felt that its attorney's duties had increased so much that a $37,000 increase in his annual salary was necessary, there is still no explanation in the record as to why it determined, immediately after petitioner's retirement, to turn the position into a part-time one and then to return to its prior voucher system.
It is also significant that petitioner was actively seeking information concerning his retirement at the identical time that the push to pass through the salary increase ordinance was occurring. We believe that the timing of these two events was not mere coincidence. Here, petitioner had purchased 16 years and 4 months of former membership in the Retirement System in 1981, obtained credit for five years free veteran's prior services on October 1, 1983 and had his salary raised $37,000 on October 13, 1983.
As discussed above, although petitioner and his witnesses denied that these actions were initiated in contemplation of petitioner's retirement, the question of intent is a question of fact and we are not bound by the witnesses' denial of such an intent. Instead, we are required to examine the entire record. Here, there was insufficient justification for the $37,000 pay increase in view of the fact that it apparently only applied to petitioner and the fact that the special arrangements made for him ceased abruptly when he retired from employment. Petitioner's credibility on the anticipation of retirement issue is also called into question by his inability to recollect the details of his contacts with the Division of Pensions just prior to the large salary increase.
These findings are amply supported by the record and provide sufficient support for the Board's conclusion that appellant's *354 increase in salary from $18,000 to $55,000 was granted primarily in anticipation of his retirement.
Finally, we reject appellant's argument that the increase in his salary from $18,000 to $55,000 coincided with the creation of a new position of full time borough attorney and that N.J.S.A. 43:15A-6(r) was therefore inapplicable to the increase. The record indicates that appellant's position remained substantially the same after the change in the method of his compensation. Appellant performed all the legal work for the Borough of Lodi both before and after the salary increase. Although he closed his private law office and began working in the borough hall when his salary increased, the nature of his responsibilities remained essentially the same. The only substantial change was in the method of his compensation. If the minor changes in the nature of appellant's responsibilities were sufficient to create a "new position" and consequently to render N.J.S.A. 43:15A-6(r) inapplicable, this would jeopardize the fiscal integrity of PERS by encouraging the conversion of public positions from "part time" to "full time" status as the occupants of those positions approach retirement age. Hence, such an interpretation of N.J.S.A. 43:15A-6(r) would be contrary to the principle that pensions statutes are to be construed so as to preserve the fiscal integrity of the pension funds. See Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed., 79 N.J. 574 (1979); Jacobs v. N.J. State Hwy. Auth., 54 N.J. 393 (1969); Chaleff v. Teachers' Pension & Annuity Fund Trustees, 188 N.J. Super. 194, 197 (App.Div. 1983), certif. den. 94 N.J. 573 (1983).[6]
Affirmed.
NOTES
[1] Appellant's salary of $55,000 established for 1984 was increased by $948 for 1985.
[2] Since we conclude that the provisions of N.J.S.A. 52:14B-10(c) providing for automatic adoption of an ALJ's decision were not triggered in this case, we have no occasion to consider whether an agency head may challenge the merits of an ALJ's decision by appeal to this court in a case where such automatic adoption has occurred.
[3] The Municipal Land Use Law may provide a useful guide with respect to this subject. That law contains a number of time deadlines for actions by municipal land use agencies. See, e.g., N.J.S.A. 40:55D-46(c); N.J.S.A. 40:55D-48(c); N.J.S.A. 40:55D-73(b). Failure to comply with any of these deadlines results in automatic approval of a development application. In addition, N.J.S.A. 40:55D-10(g) requires a municipal land use agency's decision to be accompanied by findings of fact and conclusions of law. However, N.J.S.A. 40:55D-10(g)(2) allows a municipal land use agency to defer issuance of a "memorializing resolution" containing "findings and conclusions" until 45 days after the agency has acted upon the development application. Furthermore, the agency's failure to adopt such a memorializing resolution does not result in automatic approval of a development application. Rather, the remedy is that "any interested party may apply to the Superior Court in a summary manner for an order compelling the municipal agency to reduce its findings and conclusions to writing within a stated time." N.J.S.A. 40:55D-10(g); see Lizak v. Faria, 96 N.J. 482, 492-498 (1984).
[4] An almost identical definition of "compensation" is contained in the legislation governing the Teachers' Pension & Annuity Fund, N.J.S.A. 18A:66-2(d), the Police and Firemen's Retirement System, N.J.S.A. 43:16A-1(26) and the State Police Retirement System, N.J.S.A. 53:5A-3(u).
[5] Since the ALJ's recommended decision was based solely on his conclusion that the Board lacked the authority to investigate appellant's salary increase, he made no finding whether appellant was granted an increase in salary primarily in anticipation of retirement. Therefore, the ALJ made no pertinent factual findings to which the Board could be required to give deference. Cf. Hiering v. Bd. of Trustees of Public Employees Retirement System, 197 N.J. Super. 14, 19 (App.Div. 1984).
[6] We recognize that our interpretation of N.J.S.A. 43:15A-6(r) differs from that suggested by dictum in Hiering v. Bd. of Trustees of Public Employees, supra, 197 N.J. Super. at 19-20.