675 A.2d 246

CHARLOTTE WAGNER, FOR PATRICIA SCOTT (DECEASED), PETITIONER–APPELLANT, v. BOARD OF TRUSTEES, TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted April 24, 1996—Decided May 9, 1996.

Before Judges STERN, WALLACE and NEWMAN.

*Sherman, Silverstein, Kohl, Rose & Podolsky,* attorneys for appellant (*Nan S. Famular,* on the brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent (*Mary C. Jacobson,* Assistant Attorney General, of counsel; *Stephanie C. Haegley,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Charlotte Wagner (Wagner) appeals from the final determination of the Board of Trustees of the Teachers' Pension & Annuity Fund (TPAF) denying her request for retired status death benefits related to the death of her sister, Patricia Scott (decedent). TPAF concluded that active status death benefits were payable to decedent's active status death beneficiary, the decedent's brother, John Scott.

The facts are not in dispute. Decedent was born on May 3, 1936. She enrolled in the TPAF on September 1, 1958 as required by *N.J.S.A.* 18A:66–1 *et seq.* On April 2, 1973, decedent designated her brother, John Scott, as her primary TPAF group life insurance beneficiary and her sister, Charlotte Wagner, as her contingent group life insurance beneficiary. On April 30, 1993, decedent executed and filed a TPAF application for an early retirement allowance under an option 1 monthly payout selection and requested an effective retirement date of May 1, 1993. On her retirement application, decedent designated her sister as her option 1 survivorship beneficiary. Decedent died on May 28, 1993, 28 days after she filed her early retirement application.

TPAF approved her retirement application in June 1993, unaware that decedent had died. Decedent's retirement application was processed as an early retirement, crediting her with 34 years, 7 months of service at her retirement age of 57. On June 21, 1993, the TPAF confirmed that decedent had selected option 1, that her retirement date was May 1, 1993 and that she had elected early retirement. The option 1 initial reserve in decedent's account totalled $271,092.90. If decedent died 30 or more days past her retirement, under the option 1 selection, the balance of the reserve reduced by any monthly pension payment made to date, would have been payable to her sister as decedent's designated beneficiary.

Two checks were sent to the decedent dated July 27, 1993 and August 1, 1993. The July 27 check represented two months of retirement benefits for May and June, 1993 and the August 1 check was for the July retirement allowance. In a September 27, 1993 letter, Wagner contacted the Division of Pensions and Benefits of the Department of the Treasury, informing them of her sister's death and inquiring how the payment would be made to her of the lump sum benefit as the option 1 recipient. She was advised by the Claims Bureau of the Division in a letter dated October 7, 1993 that, because decedent died "prior to the effective date of her retirement", no retirement benefits were payable on her account. Wagner was further advised that the active status benefits were payable to the beneficiary last designated, decedent's brother, John Scott.

Wagner contested the position taken by the Claims Bureau. Subsequently, in letters dated December 6, 1993 and March 7, 1994, TPAF denied Wagner's claim based on *N.J.S.A.* 18A:66–47 since Scott died "within 30 days after the date of retirement or the date of Board approval, whichever is later...." Wagner contested TPAF's determination. TPAF treated the matter as a contested case and referred it to the Office of Administrative Law, which assigned the matter to an Administrative Law Judge (ALJ). The parties filed cross-motions for summary decision. John Scott was

notified of the proceeding, but declined to intervene. The ALJ affirmed the initial decision of the TPAF, determining that active status death benefits rather than retired status death benefits were payable on behalf of the decedent. In support of his decision, the ALJ determined that the provisions of *N.J.S.A.* 18A:66–47 requiring that an applicant survive for 30 days beyond the effective retirement date or Board approval of that retirement, whichever date is later, was controlling and that neither of the two exceptions to the 30–day waiting period was applicable. The ALJ reasoned that since decedent died 28 days after requesting a May 1, 1993 date of retirement, her death took place within the 30–day period and the retirement did not become effective. Decedent was therefore considered an active member of TPAF on the date of her death and that active death benefits were payable to the active status death beneficiary, decedent's brother. The TPAF adopted the ALJ's decision.

On appeal, Wagner argues that decedent falls within exception 2 under *N.J.S.A.* 18A:66–47 because she elected an "early retirement" and the 30–day waiting period thereby imposed did not apply to decedent's retirement. She also asserts that, even if the exception does not apply, the 30–day waiting period of *N.J.S.A.* 18A:66–47 should not be enforced. She contends that this was not a "deathbed application" because decedent did not select the maximum monthly retirement allowance and therefore the purpose of the waiting period of safeguarding against "deathbed applications" would not be served by its enforcement. We disagree and affirm.

█ *N.J.S.A.* 18A:66–47 addresses the monthly allowance payout options of a retirement and the survivorship beneficiaries. That provision additionally provides in relevant part as follows:

> Except in the case of members who have elected to receive (1) a deferred retirement allowance pursuant to section 18A:66–36 or (2) early retirement allowances pursuant to section 18A:66–37 after separation from service pursuant to section 18A:66–36, if a member dies within 30 days after the date of retirement or the date of board approval, whichever is later, his retirement allowance shall not become effective and he shall be considered an active member at the time of death.

This provision indicates that members who die within 30 days after the retirement date or date of Board approval of the retirement, whichever is later, will be considered active members on the date of their death and their retirement allowances will not become effective. There are two exceptions to this general rule: (1) members who elect to defer retirements pursuant to *N.J.S.A.* 18A:66–36 and (2) members who first elected deferred retirements and then converted those deferred retirements into early retirements pursuant to *N.J.S.A.* 18A:66–36.

Decedent did not fall within either exception. Because she was over age 55 and had more than 25 years of service, she qualified for and elected to apply for an immediate early retirement pursuant to *N.J.S.A.* 18A:66–37. She had no reason to, and therefore did not, apply for a deferred retirement pursuant to *N.J.S.A.* 18A:66–36 nor a deferred retirement which could be converted later into an early retirement. The options of a deferred retirement would be of obvious appeal to an individual who was under age 55, desired to retire and sought to avoid the impact of a reduced retirement benefit. Through a deferred retirement, an individual could secure an unreduced retirement benefit which was postponed until the retirant was age 60, *N.J.S.A.* 18A:66–36(b), or convert to an early retirement after age 55 with a minimum of 25 years of service (*N.J.S.A.* 18A:66–37). Thus, because decedent died within less than 30 days of the date of Board approval of her retirement, and also within 30 days of the date of her retirement, she was considered an active member on the date of her death by virtue of *N.J.S.A.* 18A:66–47.

Wagner argues that if decedent "intended to make a deathbed application, she certainly would not have elected Option number 1. Option number 1 did not pay her as much as she could have received." To the contrary, her selection of option number 1 reinforced the notion that this was a deathbed application. As the death certificate makes clear, decedent suffered from a metastatic carcinoma and a primary peritoneal carcinoma for the past 12 months. Decedent was not in need of the maximum monthly

retirement allowance as argued because the cancer had metastasized, forecasting a likely speedy demise. Decedent thus selected the option that would provide the largest sum of money for her sister. Contrary to Wagner's assertion, the option selected was a classic deathbed selection.

Deathbed selections of retirement benefit options threaten the actuarial stability of the pension system. The pension system would be prejudiced if the option 1 retirement reserve could be selected in cases where the death of the applicant is imminent, as here, because such selections would inhibit the ability of the system to hedge the risk against payment of early death benefits. The statutory requirement that the member must survive the date of retirement or the date of Board approval, whichever is later, by 30 days, reflects the legislative effort to safeguard the integrity of the pension system, protecting the interest of all the members and still serving the interest of the individual member.

The final determination of TPAF is affirmed.