731 A.2d 513 (1998)
322 N.J. Super. 477
Donald G. WILSON, Petitioner-Appellant,
v.
BOARD OF TRUSTEES OF the POLICE AND FIREMEN'S RETIREMENT SYSTEM, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1998.
Decided February 20, 1998.
*514 Alessi, Lezenby, Zane & Cure, Barrington, for petitioner-appellant (Robert T. Zane, III, on the brief).
Peter Verniero, Attorney General, for respondent (Michael J. Haas, Senior Deputy Attorney General, of counsel; Doreen J. Piligian, Deputy Attorney General, on the brief).
Before Judges LANDAU and NEWMAN.
NEWMAN, J.A.D.
Petitioner, Donald G. Wilson, appeals from the final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) excluding longevity pay in the amount of $3,402.54 from petitioner's base salary for the purpose of calculating his retirement benefit. We affirm.
Petitioner began his public employment as a patrolman with the Borough of Haddon Heights (Borough) on September 1, 1968. In November 1994, petitioner filed a notice of his intent to retire from public employment as of December 31, 1994. At the time of his retirement, petitioner had served as a police officer for twenty-six years and was fifty-four years old.
Petitioner was eligible for "special retirement" pension benefits pursuant to N.J.S.A. 43:16A-11.1, which allows a PFRS member with twenty-five years of creditable service to receive a retirement allowance of sixty-five percent of his final compensation.
The $60,110 base salary reported by the Borough to be petitioner's 1994 salary represented a twenty-two percent increase over petitioner's reported 1993 salary. Pursuant to N.J.A.C. 17:4-1(e), the Division *515 of Pensions requires that claims involving an increase in compensation of more than fifteen percent over that of the previous year be investigated. Consequently, on January 17, 1995, the Division of Pensions wrote to the Borough, inquiring about the significant salary increase granted to petitioner just prior to his retirement. The explanation provided by the Borough related to the change in petitioner's position and responsibilities due to his promotion from captain to chief of police. In addition, on October 4, 1994, the Borough had adopted a salary increase, retroactive to January 1, 1994, to increase the base salary for the chief of police from $53,499 to $56,709. After completing its review, the PFRS agreed to utilize petitioner's 1994 salary of $56,708 as the base salary to be used to calculate his "special retirement" pension benefit. The Board determined, however, not to consider the $3,402.54 longevity payment as part of the base salary because the Borough permitted those payments to be included in an employee's salary only at the employee's option, following twenty years of employment.
In the initial decision before the administrative law judge (ALJ), the ALJ noted that N.J.S.A. 43:16A-1(26) excludes an individual's salary adjustment granted primarily in anticipation of the employee's retirement from the definition of the term pensionable credit "compensation." The ALJ further recognized that the regulation, N.J.A.C. 17:4-4.1(d) excludes forms of extra compensation, including lump sum longevity payments or increments granted in recognition of a forthcoming retirement from the calculation of an employee's base salary. The ALJ concluded, however, that the distinction between disbursing longevity pay through increments included in the employee's salary, rather than disbursing the payment in a lump sum, alters the nature of the payment and transforms it into pensionable compensation. Furthermore, the ALJ believed petitioner when he stated that he did not intend to retire at the time he exercised his option to include the longevity payment in his salary.
The Board rejected the recommendation of the ALJ. In reversing the ALJ's decision, the Board concluded that the Borough ordinance and contract provided enhanced retirement benefits only to those employees nearing retirement by virtue of their having served in excess of twenty years. According to the Board, the longevity payment scheme, to the extent it related to the petitioner's retirement benefits, violated both N.J.S.A. 43:16A-1(26) and N.J.A.C. 17:4-4.1 because pension deductions were only taken on the longevity payments when they were included in the bi-weekly salary payments. As a result, the payments did not reflect the entire course of petitioner's public employment and would represent an unfunded liability of the pension fund, thereby undermining its actuarial soundness.
On appeal, petitioner contends that the Board erred in excluding the longevity pay from his base salary for purposes of calculating his pension benefit. Petitioner also contends that the Board did not reject the initial decision of the ALJ within the time provided by N.J.S.A. 52:14B-10 and therefore the ALJ's determination should be deemed adopted, representing the final decision in this matter. We reject both contentions.
N.J.S.A. 43:16A-1(26) defines pensionable compensation:
"Compensation" shall mean the base salary, for services as a member as defined in this act, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement or additional remuneration for performing temporary duties beyond the regular workday.
The term "salary" has been defined as "monies received by a person on a fixed and continuous basis, i.e., normally paid in *516 regular periodic intervals in specific regular amounts." Koribanics v. Clifton Bd. of Educ., 48 N.J. 1, 6, 222 A.2d 87 (1966). Any salary adjustment exceeding that amount which is granted for the purpose of encouraging an employee to leave public employment and enhancing that employee's retirement benefit must be said to be granted primarily in anticipation of retirement.
The Borough ordinance and employment contract, which allow employees the option of including longevity pay in their salary only after twenty years of service improperly attempts, based on the employee's years of service, to increase the employer's established salary. While the twenty-year distinction is phrased in general terms and applies to all employees with twenty or more years of service, its application to individual retirees reveals that the twenty-year option is an individual salary adjustment granted primarily in anticipation of retirement.
N.J.A.C. 17:4-4.1 defines creditable salary as follows:
(a) Only a member's base salary shall be subject to pension contributions and creditable for retirement and death benefits in the system.
(b) The board shall reserve the right to question any salary to determine its creditability where it is evident from the record that a salary reported for benefits includes extra compensation.
(c) Such extra compensation shall not be considered creditable for benefits and all contributions made thereon shall be returned.
(d) Some of the forms of compensation that have been defined as extra compensation include overtime; bonuses; longevity lump sum payments; individual retroactive salary adjustments or individual adjustments to place a member at the maximum of his or her salary range in the final year of service; increments granted for retirement credit or in recognition of the member's forthcoming retirement or in recognition of the member's years of service in the community.
Petitioner contends that, because the longevity payments were included in his 1993 and 1994 salary and were paid in his bi-weekly paychecks, rather than as a lump sum, N.J.A.C. 17:4-4.1(d) is not applicable. Furthermore, petitioner asserts that the regulations expressly exclude only "lump sum longevity payments," and that the Board never intended to exclude payments made over time in calculating an employee's pensionable salary.
N.J.A.C. 17:4-4.1(d) is not intended to be an exhaustive list of the forms of "extra compensation" to be excluded from an employee's pensionable salary. It is unreasonable to conclude that by expressly excluding "lump sum" payments, other forms of longevity payments can not also be excluded.
Petitioner's stated intention that he anticipated working for another five years at the time that he exercised his option to have the longevity payments included in his salary is not dispositive of the determination that the twenty-year option arrangement contravenes the applicable statute and regulation. We have previously held that the type of statutory exclusion prohibited by the statute and regulation is not limited to salary increases granted in the year immediately preceding retirement. See DiMaria v. Bd. of Trustees of Pub. Employees' Retirement System, 225 N.J.Super. 341, 351, 542 A.2d 498 (App. Div.) (an increase in the employee's salary which was granted two years before his retirement could be deemed to have been granted in anticipation of retirement), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988). In our view, the twenty-year longevity payment option cannot transform an otherwise impermissible lump sum longevity payment into pensionable salary merely by making the same total dollar figure paid periodically in the employee's bi-weekly paycheck rather than in one check at the end of the year.
*517 Moreover, the effect of the twenty-year longevity pay option not only enhances the employee's retirement allowance, but also deprives the pension fund of both employer and employee contributions on longevity payments for at least a twenty-year period. While this produces substantial cost savings to the employer and the employee for the twenty-year period during which the longevity payments are not included as part of the employee's base salary, the fund will receive employer and employee contributions for only a limited number of years prior to the employee's retirement, thereby disrupting the funding mechanism and the actuarial soundness of the pension system. See, e.g., Bd. of Trustees of TPAF v. LaTronica, 81 N.J.Super. 461, 470-71, 196 A.2d 7 (App.Div.1963) (stating that "[i]n consideration of the other contributing members of the fund, the benefits of a few cannot be enhanced by ad hoc salary increases intended to increase retirement allowances without adequate compensation to the fund."), certif. denied, 41 N.J. 587, 197 A.2d 874 (1964).
Decisions rendered in New York in comparable circumstances support the Board's decision. In Holly v. New York State Teachers' Retirement System, 122 Misc.2d 871, 471 N.Y.S.2d 779 (1984), the court excluded longevity payments for purposes of calculating the employee's salary on the ground that the monies were paid in anticipation of retirement. There, the collective bargaining agreement provided employees who had twenty years of service with a one-time longevity payment based on thirty percent of their salary with the option to apply that thirty percent over one, two or three years.
In In Re Martone v. New York State Teachers' Retirement System, 105 A.D.2d 511, 481 N.Y.S.2d 781 (1984), the court held that the employee's election of a "longevity option" was properly excluded by the pension fund in calculating the employee's pensionable "regular compensation." There, the school district allowed employees with twenty or more years of service to receive a bonus equivalent to thirty percent of their salary, spread out over the course of three years, prior to retirement. The court reasoned that the longevity payments were earned by the employee over the course of his twenty years of service, and not during the final three years of his employment when the proceeds of the bonus were actually paid.
Exclusion of the type of longevity payments from an employee's base salary for the purpose of calculating pension benefits promotes consistency and predictability in the collection of contributions and payments of benefits. Utilizing uniform base salaries enables the actuary of the fund to predict with greater precision the amount of monies necessary to fund benefits and to adjust contribution rates in order to maintain the stability and sufficiency of available fund assets. The soundness of a fund is directly related to the certainty and predictability of past transactions from which certain assumptions are derived. Not only can the fund not predict whether an employee will or will not choose to exercise the option to receive longevity payments in his salary shortly before retirement, but a pension calculated on these payments that have been unfunded for a minimum of twenty years can only threaten the actuarial soundness of the fund. See Wagner v. Bd. of Trustees, Teachers' Pension and Annuity Fund, 290 N.J.Super. 146, 152, 675 A.2d 246 (App.Div.1996) (stating that retirement benefit options threaten the actuarial stability of the pension system).
We are satisfied that the Board properly interpreted the statute and regulation in excluding petitioner's longevity payments from his base salary for the purpose of calculating his "special retirement" pension benefit.
Petitioner contends that the initial decision of the ALJ should be deemed adopted by the Board because the Board did not timely reject the ALJ's decision. Petitioner further asserts that the decision *518 of the Board was not communicated to petitioner within the forty-five-day period referenced in N.J.S.A. 52:14B-10.
N.J.S.A. 52:14B-10(c) provides in relevant part:
The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency.... For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension.
Our Supreme Court has admonished that this "`automatic approval mechanism should be applied with caution.'" King v. New Jersey Racing Comm'n, 103 N.J. 412, 422, 511 A.2d 615 (1986) (quoting Aurentz v. Planning Bd. of Little Egg Harbor Township, 171 N.J.Super. 135, 142-43, 408 A.2d 140 (Law Div.1979)). Thus, we have refused to hold that an initial decision of an ALJ is deemed automatically approved solely due to a good faith, non-substantive procedural deficiency on the part of the agency. See, e.g., M.R. v. State of New Jersey, Dep't of Human Services, 268 N.J.Super. 586, 590, 634 A.2d 143 (App. Div.1993); Star Enterprise v. Wilder, 268 N.J.Super. 371, 377, 633 A.2d 1001 (App. Div.1993); Chapel v. Bd. of Trustees of Public Employees' Retirement System, 258 N.J.Super. 389, 396-99, 609 A.2d 1294 (App.Div.1992); Steinmann v. State of New Jersey, Dep't of Treasury, 235 N.J.Super. 356, 360, 562 A.2d 799 (App. Div.1988), rev'd on other grounds, 116 N.J. 564, 562 A.2d 791 (1989); DiMaria v. Bd. of Trustees of Pub. Employees' Retirement System, supra, 225 N.J.Super. at 345-49, 542 A.2d 498. Cf. Mastro v. Bd. of Trustees of Public Employees' Retirement System, 266 N.J.Super. 445, 630 A.2d 289 (App.Div.1993) (where court invoked the "deemed adopted" provision of N.J.S.A. 52:14B-10(c) on the basis that the Board failed to make any decision whatsoever within the forty-five-day period allowed by the statute).
Here, the Board acted on the decision of the ALJ within the forty-five-day period required by statute. Following the ALJ's September 10, 1996 decision, the Board considered and rejected the ALJ's initial decision at its meeting of October 21, 1996. The Board communicated its action to petitioner by letter dated October 31, 1996, further indicating its intent to supplement its determination through the filing of findings of fact and conclusions of law.
Petitioner contends that the decision was not communicated to him until October 31, 1996 and, therefore, the ALJ's decision should be deemed approved. We rejected a similar argument in Belleville v. Coppla, 187 N.J.Super. 147, 151-52, 453 A.2d 1344 (App.Div.1982). There, the agency failed to send its written decision modifying petitioner's penalty to the parties within forty-five days of receipt of the ALJ's initial decision. While we agreed that the decision was not effective under N.J.S.A. 52:14B-10(e), we declined to invalidate the Civil Service Commission's action on procedural grounds. Id. at 152, 453 A.2d 1344.
Petitioner also contends that the submission of the findings of fact and conclusions of law on December 17, 1996, well outside the forty-five day period, should result in adoption of the decision of the ALJ. Once again, we rejected a similar argument in DiMaria, supra, 225 N.J.Super. at 347, 542 A.2d 498, where we stated that the applicable provision of law, N.J.S.A. 52:14B-10(c), does not require the court to set aside "an agency head's decision which was timely but failed to include findings of facts and conclusions of law and to deem adopted in its place an ALJ's recommended decision which the agency head had rejected."
*519 The decision-making authority resides statutorily with agencies. N.J.S.A. 52:14B-10(c), which imposes a forty-five day deadline, must be read in recognition of the Board's ultimate authority to decide. Here, the Board officially acted on the ALJ's decision within the prescribed statutory time limit. We do not see where the delay in finalizing its decision resulted in any prejudice to petitioner.
The decision of the Board is, therefore, affirmed.