**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1784-18

THERESA TRIOLA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted October 14, 2021 – Decided October 26, 2021

Before Judges Hoffman and Geiger.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xxxx700.

Castellani Law Firm, LLC, attorney for appellant (David R. Castellani, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Jeffrey Padgett, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Theresa Triola challenges final administrative determinations of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) without a hearing in the Office of Administrative Law (OAL), that her PERS account expired on September 30, 2015, because two years had elapsed since her last pension contribution on June 30, 2015,[1] and denying her request for a ten-year extension of her PERS account until 2025. We affirm.

The underlying facts are largely undisputed. Triola initially enrolled in PERS on September 1, 2005, when she commenced public employment as an adjunct professor at Gloucester Community College (GCC). On November 2007, Triola began concurrent public employment as an Assistant Supervisor of Education for the Department of Children and Families (DCF), thereby establishing multiple PERS enrollments under a single PERS account pursuant to N.J.A.C. 17:2-2.2(a).

Meanwhile, on December 30, 2011, Triola applied for accidental disability retirement benefits with a retirement date of January 11, 2012. While her disability retirement application was pending and she was on Workers'

_____

[1] As a ten-month school-year member, Triola received credit for July and August 2015, pursuant to N.J.A.C. 17:2-4.3(a).

Compensation medical leave, Triola's position with DCF was discontinued and eliminated on June 18, 2010.

The Board denied Triola's application for disability retirement benefits, finding that she was not "totally and permanently disabled for the performance of [her] regular and assigned duties."  Triola appealed and the matter was transferred to the OAL for hearing as a contested case.  The Administrative Law Judge (ALJ) issued an initial decision in Triola's favor, but the Pension Board rejected the ALJ's initial decision and denied the appeal.  Triola appealed to this court and we upheld the Board's determination. Triola v. Bd. of Trs. Pub. Emps.' Ret. Sys., No. A-0646-14 (App. Div. March 16, 2016) (slip op. at 13).  The Supreme Court granted certification, but later dismissed the petition as improvidently granted.  Triola v. Bd. of Trs., Pub. Emps.' Ret. Sys., 228 N.J. 463 (2017).

On September 8, 2014, while appellant's accidental disability retirement application was pending, she wrote to the Division to request her account remain active pending the outcome of her disability pension appeal.  She recognized that the "rules have changed" since she joined the pension system and requested to be "grandfathered" in.

Triola's employment at GCC continued, with corresponding contributions to her PERS account, until June 30, 2013, when GCC did not renew her contract as an adjunct professor. On September 8, 2015, Triola was advised that her last contribution was June 30, 2013, and her PERS account was closed because two years had passed since her last contribution. Since she had more than ten years of PERS service credit, Triola was told that she could apply for a deferred retirement benefit.

On September 23, 2015, Triola contacted the Division of Pensions and Benefits (Division) and was incorrectly advised by the Assistant Director and other Division employees that her PERS account would remain open and active until 2025. However, on March 23, 2016, the Division informed her that her PERS account was no longer active. She went to the Division the next day and was told that her account had expired on September 30, 2015, pursuant to N.J.S.A. 43:15A-7(e) because her last contribution had occurred more than two years earlier and she had been a ten-month employee.

Triola wrote to the Division requesting a ten-year extension of her PERS membership until 2025. On May 6, 2016, the Division responded confirming that her PERS account expired on September 30, 2015. The letter acknowledged that Triola wished to keep the account open to "purchase service credit." It noted

that on May 28, 2014, Triola requested to purchase temporary/substitute service credit, and that request was closed in January 2015. Under N.J.A.C. 17:2-5.1, "[o]nly active members of the System shall be eligible to make application for purchase of credit" and because her membership expired on September 30, 2015, Triola was ineligible to submit a request. Because she had ten years of service credit at the time her membership ended, Triola was told her account "vested" and she was eligible for deferred retirement starting at age sixty. She was also advised that she could file an appeal to the Board.

Triola subsequently requested a ten-year extension of her account until 2025 under N.J.S.A. 43:15A-8(a). The Board denied Triola's request. It determined that her "termination from [GCC] was not a discontinuance of employment that would qualify [her] for the [ten] year exception under N.J.S.A. 43:15A-8."

Triola appealed the Board's decision. Though the Board found her non-renewal from GCC did not qualify as a discontinuance of employment under N.J.S.A. 43:15A-8(a), Triola contended the statute permits an employee to continue in PERS if the discontinuance was "without personal fault." She alleged that she was discontinued from GCC without personal fault and requested a hearing before the OAL. On September 19, 2018, the Board

determined there were no material facts in dispute and denied appellant's request for an OAL hearing.

On November 15, 2018, the Board issued a Final Administration Determination denying Triola's appeal, finding that her account expired on September 30, 2015, and she did not qualify for a ten-year extension of her account under N.J.S.A. 43:15A-8(a). The Board explained that "[t]he Division's long-standing interpretation" of N.J.S.A. 43:15A-7(e) and N.J.S.A. 43:15A-8(a) was that the ten-year extension under N.J.S.A. 43:15A-8(a) was only available "to employees who have been terminated through either a Reduction in Force or where the member's position has been eliminated." In contrast, "[t]he nature of an adjunct faculty's employment is on a semester-by-semester basis."

This appeal followed. Triola raises the following points:

> I. THE [BOARD] WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE AND DENIED . . . TRIOL[A] DUE PROCESS IN FAILING TO REFER [HER] PENSION APPEAL TO THE [OAL] FOR A HEARING ON THE DISPUTED AND CONTROVERTED FACTS RELATING TO THE CESSATION OF HER EMPLOYMENT WITH [GCC] AND THE PERS ELIGIBILITY FOR THE POSITION PETITIONER MAINTAINED WITH [GCC] AS AN ADJUNCT PROFESSOR.
>
> II. THE [BOARD] WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE IN REFUSING TO RECOGNIZE [TRIOLA], AN ADJUNCT

6

PROFESSOR, AS ONE OF THE CLASS OF PERS EMPLOYEES ENTITLED TO THE BENEFIT OF THE [TEN-]YEAR EXTENSION TO REOPEN A PENSION ACCOUNT UNDER N.J.S.A.43:15A-8(a).

III. THE [BOARD] SHOULD BE EQUITABLY ESTOPPED FROM DENYING [TRIOLA] THE RIGHT TO REOPEN HER PENSION ACCOUNT UNDER THE [TEN-]YEAR EXTENSION PROVISION 8(a), GIVEN THE FACT THAT [TRIOLA] REQUESTED THAT HER ACCOUNT REMAIN ACTIVE AND OPEN DURING HER DISABILITY PENSION APPEAL PROCESS AND IN 2014 WITHIN [TWO] YEARS OF THE LAST CONTRIBUTION AND IT WAS REPRESENTED BY NUMEROUS EMPLOYEES OF THE DIVISION OF PENSIONS, INCLUDING THE ASSISTANT DIRECTOR, THAT HER PENSION ACCOUNT WOULD REMAIN OPEN UNTIL 2025.

Our scope of an administrative agency's final determination is limited.  In re Carter, 191 N.J. 474, 482 (2007).  We accord a "strong presumption of reasonableness" to the agency's exercise of its statutorily delegated responsibilities.  City of Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980).  Further, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'"  Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (second alteration in original) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)).  Absent arbitrary, unreasonable, or capricious action, or a lack of support

7

in the record, the agency's final decision will be sustained. In re Herrmann, 192 N.J. 19, 27-28 (2007). The burden of showing the agency's action was arbitrary, unreasonable or capricious rests upon the appellant. Barone v. Dep't of Hum. Servs., 210 N.J. Super. 276, 285 (App. Div. 1986).

When determining one's eligibility for pension benefits, "eligibility is not to be liberally permitted." Smith v. Dep't. of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). "Instead, . . . the applicable guidelines must be carefully interpreted so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Ibid. (alterations in original) (quoting Chaleff v. Teachers' Pension & Annuity Fund, 188 N.J. Super. 194, 197 (App. Div. 1983)). Accord DiMaria v. Bd. of Trs., Pub. Emps.' Ret. Sys., 225 N.J. Super. 341, 354 (App. Div. 1988). The burden to establish pension eligibility is on the applicant, not the Board. Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008).

Triola primarily argues that the Board's denial of a ten-year extension to her PERS account was arbitrary, capricious, and unreasonable. Two statutory provisions control membership in PERS when a member's public employment ends. N.J.S.A. 43:15A-7(e) provides: "Membership of any person in the

[PERS] retirement system shall cease if he shall discontinue his service for more than two consecutive years." In turn, N.J.S.A. 43:15A-8(a) provides:

> If a member of the retirement system has been discontinued from service without personal fault or through leave of absence granted by an employer or permitted by any law of this State and has not withdrawn the accumulated member's contributions from the retirement system, the membership of that member may continue, notwithstanding any provisions of this act if the member returns to service within a period of [ten] years from the date of discontinuance from service.

N.J.S.A. 43:15A-8(a) is a "discrete and limited exception," Del Pomo v. Bd. of Trs., Pub. Emps.' Ret. Sys., 252 N.J. Super. 430, 433 (App. Div. 1991), to the general rule that should "be narrowly construed," Petition of Singer Asset Fin. Co., 314 N.J. Super. 116, 121 (App. Div. 1998). The account cannot be extended "unless there was a return to public service." Del Pomo, 252 N.J. Super. at 433.

The decision not to renew Triola's contract as an adjunct professor does not fall within N.J.S.A. 43:15A-8(a). Triola was employed under a discrete, nontenured, one-year contract, not an ongoing employment position. We view this as similar to the annual contracts awarded to nontenured schoolteachers. See Pascack Valley Reg'l High Sch. Bd. of Educ. v. Pascack Valley Reg'l Support Staff Ass'n, 192 N.J. 489, 491 (2007) (noting non-tenured school employees "have no right to the renewal of their individual contracts"); Bd. of

9

Educ. v. Wyckoff Educ. Ass'n, 168 N.J. Super. 497, 501 (App. Div. 1979) (nonrenewal of nontenured teacher contracts "is a management prerogative").

In Lally v. Pub. Emps.' Ret. Sys., a municipal councilwoman who served two three-year terms did not return to public service for more than two years. 246 N.J. Super. 270, 272 (App. Div. 1991). She argued she was entitled to the ten-year extension in N.J.S.A. 43:15A-8(a). Ibid. We deferred to the Board's interpretation, finding that the petitioner "was not laid off, nor was her position abolished." Ibid. Her discontinuance was triggered by "operation of law upon her departure from office as a municipal councilwoman." Id. at 271-72. We recognized that N.J.S.A. 43:15A-8(a) was limited to circumstances where a member is on approved leave of absence without pay, or his employment terminates through no fault of his own, such as a layoff or abolishment of a position. Id. at 272.

There was nothing unpredictable about Triola's situation. She accepted a limited term position, knowing that nonrenewal would leave her short of the required creditable service for vesting and that her PERS account would expire under N.J.S.A. 43:15A-7(e) unless she returned to covered employment within two years.

10

Triola has failed to demonstrate the Board's determinations were arbitrary, capricious, or unreasonable. The plain meaning of the relevant statutes supported the Board's determinations that: (1) Triola's PERS account expired on September 30, 2015, as two years had lapsed since her last pension contribution on June 30, 2015; and (2) she did not qualify for a ten-year extension of her PERS account under N.J.S.A. 43:15A-8(a). These determinations are entitled to the deference we give to an administrative agency's interpretation of statutes and regulations within its implementing responsibility. Wnuck, 337 N.J. Super. at 56. This is particularly so in the absence of any showing that the Board has rendered an inconsistent or contrary prior decision, or otherwise acted in an arbitrary, capricious, or unreasonable manner.

Because the controlling facts were undisputed, the Board decided that a testimonial hearing was not necessary. See N.J.A.C. 1:1-4.1(a) ("After an agency proceeding has commenced, the agency head shall promptly determine whether the matter is a contested case."). Triola argues that the Board's denial of an OAL hearing was arbitrary, capricious, and unreasonable and denied her right to due process. She contends an OAL hearing was necessary because she intended to produce evidence that she was ineligible for PERS benefits from 2010 to 2013 because she did not meet the monetary or hourly requirements

under N.J.S.A. 43:15A-7(d)(3) and (4) and that each successive semester was "reemployment" in a PERS eligible position. We disagree. The related facts were not material to her statutory eligibility to keep her account open or to an account extension, and her legal arguments related to those facts were meritless.

As explained by our Supreme Court:

> It is well-established that where no disputed issues of material fact exist, an administrative agency need not hold an evidential hearing in a contested case. Cunningham v. Dept. of Civil Service, 69 N.J. 13, 24–25 (1975). The mere existence of disputed facts is not conclusive. An agency must grant a plenary hearing only if material disputed adjudicative facts exist. Bally Mfg. Corp. v. Casino Control Comm'n, 85 N.J. 325, 334 (1981). The key issue therefore is whether any material facts remained in dispute when the director made her final decision.
>
> [Frank v. Ivy Club, 120 N.J. 73, 98 (1990) (emphasis in original).]

Because there were no material facts in dispute with respect to the controlling legal issues, "the administrative procedures followed fully comported with administrative due process." Ibid.

Triola also argues that because her GCC contract was not guaranteed from semester to semester, each new semester counts as a new PERS enrollment despite N.J.S.A. 43:15A-7. We disagree. An adjunct professor remains a member of PERS during "short, regularly-occurring breaks between periods of

reasonably expected continued employment . . . ." Estate of Hagel v. Bd. of Trs., Pub. Emps.' Ret. Sys., 226 N.J. Super. 182, 186 (App. Div. 1988).

Triola further argues the Board should be equitably estopped from denying the ten-year extension of her PERS account because the Assistant Director and other employees of the Division of Pensions represented to her that her account would remain open until 2025. We are unpersuaded.

"Here, as in all cases, equity follows the law." Berg v. Christie, 225 N.J. 245, 280 (2016). A pension member cannot obtain an equitable remedy unavailable under applicable statutory law. Ibid. "When positive statutory law exists, an equity court cannot supersede or abrogate it." In re Quinlan, 137 N.J. Super. 227, 261 (Ch. Div. 1975), modified and remanded on other grounds, 70 N.J. 10 (1976). Triola cannot invoke an equitable doctrine to override an unambiguous statute. Berg, 225 N.J. at 280.

In any event, the doctrine of equitable estoppel does not apply here. The doctrine is limited to "conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." McDade v. Siazon, 208 N.J. 463, 489 (2011) (quoting Dambro v. Union Cnty. Park Comm'n, 130 N.J. Super. 450, 457 (Law Div. 1974)). "Equitable estoppel is applied in only very compelling

13

circumstances." Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 67 (App. Div. 2000). It is "rarely applied against a governmental entity, . . . particularly when estoppel would 'interfere with essential government functions,'" O'Malley v. Dep't of Energy, 109 N.J. 309, 316 (1987) (quoting Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954) (citations omitted)). "[T]he creation of legislation is an essential function of the Legislature, so that sovereign immunity bars the equitable estoppel claim." Berg, 225 N.J. at 280. Consequently, the admittedly incorrect information she received does not provide grounds to ignore the plain language of N.J.S.A. 43:15A-7(e), which mandates that Triola's PERS account expired on September 30, 2015.

In addition, "[e]quitable estoppel may be invoked against a governmental entity only 'to prevent manifest injustice.'" Berg, 225 N.J. at 280 (quoting O'Mally, 109 N.J. at 316). While it is undisputed that Division employees incorrectly informed Triola that her PERS account would remain open until 2025, she has not demonstrated it prejudiced her. Although claiming she was deprived of the opportunity to take unspecified further action, she has not shown what action she could have taken to keep her PERS account open. We discern no compelling circumstances or manifest injustice.

Triola's remaining arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1784-18